KANTOR & KANTOR, LLP
ALAN E. KASSAN, State Bar No. 113864
PETER S. SESSIONS, State Bar No. 193301
19839 Nordhoff St.
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272
akassan@kantorlaw.net
psessions@kantorlaw.net

Attorneys for Plaintiff
Andy Chan

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Andy Chan,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Life Insurance Company of North America; Fujitsu Business Communications Systems, Inc. Long Term Disability Plan,<br><br>　　　　Defendants. | Case No. C 07-06214 WHA<br><br>**PLAINTIFF'S BRIEF REQUESTING LEAVE TO CONDUCT DISCOVERY**<br><br>[Declaration Of Peter S. Sessions Filed Concurrently Herewith] |

　　　　Pursuant to the Court's March 13, 2008 Case Management Order, plaintiff Andy Chan hereby submits this brief regarding discovery issues in this ERISA case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **Introduction**

This is an action for long term disability ("LTD") benefits pursuant to an employee benefit plan (the "Plan" or "LTD Plan") established by plaintiff Andy Chan's former employer, Fujitsu Business Communications Systems, Inc. ("Fujitsu"). As a result, this action is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). The Plan was funded by a group disability insurance policy purchased by Fujitsu from defendant Life Insurance Company of North America ("LINA").

The Court held a case management conference in this case on March 13, 2008. On that date, the Court issued an order in which it instructed defendants to file the "administrative record" and a motion for summary judgment on July 3, 2008, with the motion to be heard on a 35-day track. The Court further instructed plaintiff to file an opposition to defendants' motion, accompanied by his request for discovery. The Court also ordered a further case management conference for September 4, 2008. Declaration of Peter S. Sessions ("Sessions Decl.") at ¶ 2 & Exh. A.

To plaintiff's knowledge, defendants have not filed the administrative record with the Court, nor have they filed their motion for summary judgment. Sessions Decl. at ¶ 3. In the absence of those filings, plaintiff now files this brief. Because defendants have not disclosed the "administrative record," and there is no motion for summary judgment to oppose, plaintiff therefore limits this brief to a discussion of appropriate discovery.

II. **Statement of Facts**

Andy Chan was a communications equipment installer for Fujitsu, originally hired in 1978. Exh. B to Sessions Decl. at P023. Unfortunately, Mr. Chan developed kidney disease, which led to renal failure. *Id.* at P021. As a result, he stopped working for Fujitsu in November of 1994, and had a kidney transplant in 1998. *Id.* He applied for, and received, LTD benefits from LINA through Fujitsu's LTD Plan. *Id.*

Mr. Chan's condition has not improved much since his transplant. As even LINA's commissioned medical report states, "The patient has an extremely complex medical history with numerous medical problems[.]" *Id.* Those problems include:

1. Renal failure secondary to polycystic kidney disease;
2. Diabetes;
3. Gout;
4. Chronic hepatitis B;
5. Atrial fibrillation;
6. Hypertension; and
7. Duodenal carcinoid.

*Id.* at P021-22. As a result, Mr. Chan takes more than a dozen prescription medicines for his conditions. *Id.* at P001-02.

Despite Mr. Chan's kidney transplant and well-documented medical history, LINA required Mr. Chan to attend an independent medical examination ("IME") with Dr. Kenneth J. Hammerman (gastroenterologist). *Id.* at P021-28. Dr. Hammerman's report, dated March 23, 2007, confirmed that Mr. Chan's complaints were consistent with the medical records he reviewed. *Id.* at P025. Dr. Hammerman's report further found that Mr. Chan "has multiple medical problems," "demonstrate[d] generalized weakness," "walked slowly," and "does have some evidence of some mild muscle atrophy." *Id.* Dr. Hammerman concluded, "In my opinion, because of his multiple medical problems and multiple medications, I would consider Mr. Chan physically impaired. He does exhibit significant generalized weakness, lack of stamina, and dyspnea [shortness of breath] on exam." *Id.* Dr. Hammerman opined that Mr. Chan could stand and walk occasionally (less than 2.5 hours per day), push/pull/lift/carry less than ten pounds occasionally, and sit frequently (2.5-5.5 hours per day). Dr. Hammerman stated that Mr. Chan should never balance, stoop, kneel, crouch, or crawl. *Id.* at P027-28.

Despite Dr. Hammerman's confirmation of Mr. Chan's "multiple medical problems," and difficulty with weakness and stamina, LINA interpreted this report to mean that Mr. Chan could return to work. LINA terminated Mr. Chan's claim with a May 2, 2007 letter in which it stated

that "the information provided does not support and document that you are totally disabled[.]" *Id.* at P004-09. LINA suggested that even though Mr. Chan was nearly 60 years old, had been out of work for 13 years for medical reasons, and still suffered from several serious medical conditions, that he could return to work full-time as a clerk, cashier, customer service representative or telephone solicitor. *Id.* at P006.

Mr. Chan appealed that decision. In conjunction with his appeal, he submitted a June 7, 2007 letter from his treating physician, Dr. Wesley Lisker (nephrology). *Id.* at P010-11. Dr. Lisker informed LINA that Dr. Hammerman had overestimated Mr. Chan's abilities. He stated that Mr. Chan was at the lower end of the occasional scale, and thus "would not recommend him standing or walking for 2.5 hours, based upon his medical condition." *Id.* at P11. Dr. Lisker also disagreed with the recommendations regarding Mr. Chan's ability to reach overhead and perform manipulations and grasping with his hands. *Id.*

Dr. Lisker concluded:

> I base my estimation of Mr. Chan's abilities on my experience taking care of transplantation patients for the last 23 years. Mr. Chan had a kidney transplant since 1998. As is typical for many patients with this lengthy duration of steroid treatment and exposure to chronic immunosuppressant medications, there is generalized weakness and poor stamina. Your assessment form does not clearly indicate the very lowest levels of the abilities of these patients, and makes me unable to agree with your assessment that the patient is still capable of any gainful employment. Particularly, looking at the list of job descriptions, check cashier, telephone solicitor, registration clerk, up through customer service representative, I believe that, and felt Dr. Hammerman agreed, that Mr. Chan is disabled and cannot function in these roles.

>Again, in referencing Dr. Hammerman's opinion, I believed at the time that I received the letter that Mr. Chan would be considered to be totally disabled based upon my reading of Dr. Hammerman's assessment. I had no reason to suspect that the data available on the entirely subjective physical ability assessment form would be used to keep Mr. Chan from continuing to receive deserved benefits for disability. I believe that the physical ability assessment form has overrated Mr. Chan's ability. I strongly disagree with the findings that you have made with respect to Mr. Chan's disability determination.
>
>I would appreciate your attention to Mr. Chan's situation and respectfully request that you reconsider your decision. *Id*.

Despite this unequivocal, convincing letter from Mr. Chan's treating doctor, LINA remained unimpressed. It denied Mr. Chan's appeal in an August 22, 2007 letter in which it contended that Dr. Lisker's opinions were not sufficiently supported by medical evidence. *Id.* at P013-19. It is not clear from LINA's denial letter whether Mr. Chan's appeal was reviewed by another physician (it only refers to a review by LINA's "medical staff"), and it is equally unclear whether LINA ever contacted Dr. Hammerman to confirm whether he felt that Mr. Chan could return to the types of jobs cited in LINA's denial letters. Nor apparently did anyone at LINA follow up with Dr. Lisker to further discuss the discrepancy between his opinion and Dr. Hammerman's opinion regarding Mr. Chan's physical restrictions and limitations.

Having exhausted his administrative appeals with LINA, Mr. Chan filed this action.

### III. Legal Authorities

**A.** <u>Plaintiff is Entitled to Obtain Evidence Through Discovery That Supports His Claim That LINA Abused Its Discretion</u>

As mentioned *supra*, defendants have not produced the administrative record as part of their initial disclosures or pursuant to the Court's March 13, 2008 order. As a result, plaintiff does not have a full and complete copy of the plan documents governing this action, and therefore also does not know whether Fujitsu, in those plan documents, properly delegated to LINA the discretionary authority to make benefit determinations. The default standard of review in ERISA cases is *de novo*, *Firestone Tire & Rubber Co. v. Bruch*, 109 S. Ct. 948, 956, 489 U.S. 101, 115 (1989), and therefore if the Fujitsu plan documents do not properly confer discretionary authority on LINA, the Court must employ the *de novo* standard here.

As a result, plaintiff does not concede that the standard of review in this case should be for abuse of discretion. However, in the event the Fujitsu plan documents do confer discretionary authority, plaintiff contends that discovery is appropriate. As the Supreme Court recently held in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (June 19, 2008), a claim administrator who both evaluates and pays a benefit claim arising under ERISA, such as LINA here, operates under a conflict of interest. *Id.* at 2348. Under *Firestone*, *supra*, this conflict of interest "must be weighed" as a factor in determining whether the claim administrator abused its discretion.

*Glenn* went on to hold that in weighing a fiduciary's conflict of interest, courts are permitted to evaluate factors from outside the "administrative record." Specifically, *Glenn* identified an insurer's history of biased claims administration, and the integrity of an insurer's claims procedures, as the type of evidence that might influence how a conflict is weighed. *Glenn*, 128 S. Ct. at 2351.

The Ninth Circuit's recent jurisprudence on what types of evidence should be admitted in ERISA cases has anticipated, and is entirely consistent with, *Glenn*. Even prior to *Glenn*, the Ninth Circuit had held that plaintiffs in ERISA cases are entitled to introduce evidence from outside the "administrative record" in order to demonstrate a claim administrator's conflict of

-6-    Case No. C 07-06214 WHA
PLAINTIFF'S BRIEF REQUESTING LEAVE TO CONDUCT DISCOVERY

interest. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc). In *Abatie*, the Ninth Circuit held that ERISA plaintiffs may present evidence to the courts such as "any evidence of malice, of self-dealing, or of a parsimonious claims-granting history," "inconsistent reasons for denial," inadequate investigation of a claim, failing to ask the plaintiff for necessary evidence, failing "to credit a claimant's reliable evidence," and making decisions against the weight of evidence in the record. *Id.* at 968.

The Ninth Circuit extended this line of reasoning in *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007), in which it held attorneys' fees are properly awarded for time spent conducting discovery in an ERISA case:

> Because an ERISA plaintiff may be permitted to supplement the administrative record with evidence of a conflict of interest on the part of the defendant, see *Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 976-77 (9th Cir. 1999), we agree with Welch that *some* discovery aimed at demonstrating a conflict of interest may have been appropriate.

*Welch*, 480 F.3d at 949-50 (emphasis in original). Notably, the Ninth Circuit did not find that the plaintiff was first required to demonstrate a conflict of interest in the administrative record before conducting discovery. In fact, the Ninth Circuit stated that a plaintiff is entitled to conduct discovery "*aimed* at demonstrating a conflict of interest." *Id.* (emphasis added).

In the short time since *Abatie*, numerous district courts in the Ninth Circuit have followed suit and approved discovery requests by plaintiffs in ERISA cases. *See, e.g., Groom v. Standard Ins. Co.*, 492 F. Supp. 2d 1202 (C.D. Cal. 2007); *Harper v. Unum Life Ins. Co. of America*, 2007 WL 1792004, *5 (E.D. Cal. 2007); *Sterio v. Highmark Life Ins. Co.*, 2007 WL 1650929 (E.D. Cal. 2007); *Beckstrand v. Electronic Arts Group Long Term Disability Ins. Plan*, 2007 WL 1599769, *5 (E.D. Cal. 2007) ("discovery that would lead to evidence that, among other things, the plan had a record of denying benefits, continuously retaining doctors who rendered opinions favorable to the plan, or had standards or protocols with which the administrator complied . . . . Such evidence now goes to the deference that the court will use in reviewing the merits of the

case and, thus, is relevant and admissible under *Abatie*"); *Starr v. MGM Mirage*, 2007 WL 1560335, *4 (D. Nev. 2007) ("Starr may conduct the requested discovery to determine whether or not there is a conflict of interest, and if so, the extent of that conflict"); *Linich v. Broadspire Services, Inc.*, 2007 WL 841509, *6 (D. Ariz. 2007) ("in light of *Abatie*, the Court finds that Plaintiff has a valid claim for discovery outside the administrative record regarding the conflict of interest involved in this case"); *McCurdy v. Metropolitan Life Ins. Co.*, 2007 WL 915177, *2 (E.D. Cal. 2007); *Liu v. Standard Ins. Co.*, 457 F. Supp. 2d 1030, 1038 (C.D. Cal. 2006); *Baldoni v. Unumprovident, Illinois Tool Works, Inc.*, 2007 WL 649295 at *6 (D. Ore. 2007); *Gullidge v. Hartford Life & Acc. Ins. Co.*, 501 F. Supp. 2d 1280, 1283 (C.D. Cal. 2007) (hours expended on discovery were reasonable because, under *Abatie* and *Welch*, "[s]ome discovery regarding whether a conflict of interest existed is therefore appropriate if the plaintiff plans to raise the issue of conflict of interest at trial"); *Alvarez v. Unum Life Ins. Co. of America*, 2007 WL 2348737, *7 (N.D. Cal. 2007) (granting request for discovery).

In short, it is well-established under Ninth Circuit law, now confirmed by the Supreme Court in *Glenn*, that evidence from outside the "administrative record" is admissible to demonstrate a claim administrator's conflict of interest. The Ninth Circuit has further indicated that such evidence may be procured through the discovery process. Thus, if LINA's claims decision in this case is to be reviewed for abuse of discretion,[1] plaintiff is entitled to propound discovery to explore how LINA's conflict of interest may have affected its decision to terminate plaintiff's benefits.

B. Plaintiff Seeks Leave to Conduct Discovery Regarding LINA's Conflict of Interest

As noted above, *Glenn* found that a conflict of interest "should prove more important" where "an insurance company administrator has a history of biased claims administration" or where "the administrator has taken active steps to reduce potential bias and to promote

---

[1] Again, it should be stressed that under *Firestone* the default standard of review is *de novo*. Defendants have not yet demonstrated that the more lenient standard of review for abuse of discretion is appropriate.

accuracy[.]" 128 S. Ct. at 2351. *Abatie* further stated that in weighing conflict of interest, an insurer's "parsimonious claims-granting history" is relevant. 458 F.3d at 968.

Thus, these two controlling cases clearly endorse an investigation into (a) an insurer's history of claims administration; and (b) the methods by which an insurer reviews claims and insulates itself (or fails to) from financial pressures. Plaintiff therefore requests leave to conduct written discovery regarding LINA's claims approval/denial history, as well as the structure and organization of LINA's claims department. Plaintiff also seeks claims manuals, policies, procedures, guidelines, or other similar documents that explain how LINA claims personnel are instructed to evaluate and make decisions on claims. In particular, plaintiff seeks information concerning how LINA uses and relies on the reports of reviewing physicians, as the report by Dr. Hammerman in this case seems inconsistent with LINA's ultimate decision to terminate plaintiff's benefits. Plaintiff is also concerned that LINA may not have had his claim reviewed by a physician during his appeal, and that LINA did not contact Dr. Hammerman in an effort to square his opinion with the opinion of plaintiff's treating physician, Dr. Lisker. As a result, plaintiff also seeks the deposition(s) of those individuals at LINA who made the decision to terminate plaintiff's benefits in order to determine whether their decision was made objectively and in accordance with plan provisions, and to what extent, if any, it was infected by LINA's structural conflict of interest.[2]

Dated: July 25, 2008                                KANTOR & KANTOR LLP


                                                    By: /s/ Peter S. Sessions
                                                        Peter S. Sessions
                                                        Attorney for Plaintiff
                                                        Andy Chan

---

[2] Of course, plaintiff is also entitled to production of the "administrative record" and all applicable plan documents pursuant to ERISA, 29 U.S.C. § 1021 (plan administrators required to furnish plan documents), Federal Rule of Civil Procedure 26, and this Court's March 12, 2008 order.