# Exhibit A

POL NO.

570-773-4778    Lt Rec'd:

Name  Andy Enshaw

SS #  ███████

Address  5145 Central Ave.

Date of Hire  3/21/78

Newark CA 94560

D.O.B.  ████ /44

L.D.W.  11/7/94

Date of Acc (3rd)  11/6/94

REDACTED

Policy Eff. Dt.  4/1/89 - 4/1/95

A P D.O.D.  11/6/94

First Visit Dt _____

Ben St. Dt.  5/6/95

AP of FV name _____

Term Date  5/5/2015

SS DO. D.  11/9/44

Dx Code  054/QD

2nd Dx Code _____

Occ Code  03 year driver

Coverage Code  580  (590)

(EE)/ ER Paid : Percentage 100%

Received  Documentation :

ERISA  90 day  4/3/96
180 day  4/3/96

Claimform  ✓ (w.f.)

AP Statement  ✓  Ap name _____

Enrollment card  ✓  Signed 1/15/39

Disability Questionnaire  ✓

SS auth. form  ✓  SS Records _____

Accident Report  —— (no accident)

Narrative  Job Assignment ✓

SS (Award / Denial)  ✓

Birth Certificate

Dr List  ✓

Amount Claimed :  $

Eligible Amount :  $ Life : 3 x BAE = 1k  94,512 (7/4/44) =1341

Monthly Benefit :  $ 735.34  for 240 months

LINA 0001

5/2/2007

**Claimant Name:** Andy Chan          SS#: ▓▓▓▓▓▓          Page #1

# CURRENT CASE PLAN

5/2/2007
Review of updated information did not support the R&L's outlined by the treating physician. an IME was done that indicate
R&L's equvilent to sedentary work and a TSA was done identifying jobs. I am denying the continuation of this TPD claim.
Derek Brown
$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$

REDACTED

CHA5382.xls

INDIVIDUAL INSURANCE (Cont'd)

Definitions - As used in this policy:
"Employee" means only an employee in one of the eligible classes (other than dependents) set forth above.
"Covered employee" means an employee who is covered by this policy, under the terms set forth on page 3.

Changes In Eligible Classes - Eligible classes may be added or removed if you request it in writing. Any such change will take effect on the next premium due date on or after the date we accept your request. The change may take effect later if you so specify.

Enrollment - An employee may enroll by making a written request on forms supplied by us, and by agreeing to pay the required premium contribution.

Contributions - Contributions from covered employees are required, except for Basic Life Insurance.

Effective Date - Insurance will go into effect on the policy effective date, for all employees who have enrolled by then.

An employee who later becomes eligible may be insured as follows:
a) If he enrolls before he becomes eligible, his coverage will begin on the date he becomes eligible.
b) If he enrolls within 31 days after he becomes eligible, his coverage will begin on the date we receive his request.
c) If he enrolls after that, his coverage will begin on the date we approve his request. In this case we may require him to provide, at no expense to us, medical evidence that he is insurable.

If an employee is absent from work, because of injury or sickness, on the date his coverage would begin, his coverage will not begin until he has returned full time to the duties of his work.

Termination - An employee's coverage will end when any of these things happen:
a) On the date the group policy is terminated.
b) On the date that he is no longer in an eligible class.
c) Class 1 - On the date he is no longer actively employed.
   Class 2 - 30 days after termination of employment.
   This does not apply if he is
   1) disabled;
   2) on a leave of absence not to exceed __six__ month(s); or
d) At the end of the period for which a contribution has been made, if he fails to make a contribution required by this policy.
e) On the next premium due date on or after the date he reaches the maximum age shown in the Schedule of Benefits on page 6.
f) If this policy is issued to an employer association, or a multiple employer trust fund, on the next premium due date when his employer no longer participates in the insurance plan.

LINA 0005

GROUP INSURANCE POLICY

## CONVERSION PRIVILEGE

If an employee's life insurance ends, for any reason except not paying premiums, then he may have us issue him a policy of individual life insurance.

He may choose any type of life insurance that we issue to persons of his age in the amount applied for, except:

a)   He may not choose term insurance.
b)   He may not apply for an amount greater than his coverage under this policy.
c)   The policy will not contain disability or other extra benefits.
d)   If the group policy is terminated, he may not convert unless he has been covered for at least 3 years.  In this case, he may not apply for more than $10,000 of insurance.

To get such a policy, he must:

a)   apply within 31 days after his coverage under this policy ends; and
b)   pay the required premium, based on our table of rates for such policies, his age and class of risk.

He need not show us that he is insurable.

The policy will take effect at the end of this 31 day conversion period.  If he dies during this 31 day period, then we will pay, as a claim on this policy, the amount of life insurance that he could convert.  It does not matter whether he applied for a converted policy.  If such a policy is issued, it will be in exchange for any further benefits from this policy.

LINA 0006

GROUP INSURANCE POLICY

## PREMIUMS

The premiums for this policy shall be figured using the rates set forth below.

Life - $.17 per month per $1,000.00 of coverage.

Supplemental Life

> According to ages as follows:

| | | | |
|---|---|---|---|
| less than 30 | $.07 | 50 - 54 | $.40 |
| 30 - 34 | $.08 | 55 - 59 | $.61 |
| 35 - 39 | $.09 | 60 - 64 | $.95 |
| 40 - 44 | $.14 | 65 - 69 | $1.61 |
| 45 - 49 | $.24 | 70 - 74 | $2.84 |

Dependent Life - Plan A - $.70 per month per family unit.
              Plan B - $1.30 per month per family unit.
              Plan C - $1.90 per month per family unit.

**Premium Payments** - Unless we provide otherwise, coverage which goes into effect will be charged for from the first day of the policy month on or after the date that the coverage goes into effect. If any coverage ends, premium charges for it will end on the last day of the month in which coverage ends. Policy months shall be figured from the Policy Anniversary Date shown on page 1.

If premiums are paid yearly, every 6 months, or every 3 months, then the payments required above will be pro rated for the premium period.

**Rate Changes** - We may change the premium rates as follows:
  a)  When a class of persons is made eligible or not eligible.
  b)  When there is a change in the factors bearing on the risk we have assumed.
  c)  When it is required by the experience of the risk, or by a change in our table of rates for a risk. In this case, a rate change will go into effect on the next premium due date. We may do this only after this policy has been in force for 12 months, and at least 12 months after the last rate change.

We may only change premium rates if we give you at least 31 days written notice.

This policy will not be entitled to share in our surplus earnings.

**Grace Period** - There is a 31 day grace period after each premium due date after the first. Coverage will stay in force during this period if the premium is late. Coverage will end if the premium is not paid by the end of the grace period. If this happens, you will still owe us the premium for the grace period.

This provision will not apply if a person's coverage would end for some reason other than not paying premiums.

GROUP INSURANCE POLICY

SCHEDULE OF BENEFITS

LIFE INSURANCE BENEFIT

Class 1

Amount of Basic Life Insurance:

An amount equal to one times the employee's Basic Annual Earnings* rounded to the next higher $1,000., if not already a multiple thereof, but not more than $300,000.

Class 2

Option I

Amount of Supplemental Life Insurance:

An amount equal to one times the employee's Basic Annual Earnings* rounded to the next higher $1,000., if not already a multiple thereof, but not more than $400,000.**

Option II

Amount of Supplemental Life Insurance:

An amount equal to two times the employee's Basic Annual Earnings* rounded to the next higher $1,000., if not already a multiple thereof, but not more than $400,000.**

Option III

Amount of Supplemental Life Insurance:

An amount equal to three times the employee's Basic Annual Earnings* rounded to the next higher $1,000., if not already a multiple thereof, but not more than $400,000.**

TABLES OF COVERAGES

We agree to pay the benefits described in the forms listed below.  These forms are part of this policy and follow this page.

| Form No. | Description | Applies to Class(es) |
|---|---|---|
| LM-8L71 | Life Insurance Benefit | Class 1 only |
| LM-8L72 | Supplemental Life | Class 2 only |
| LM-8L73a | Waiver of Premium | Class 1 only |
| LM-8L74(13814) | Permanent Total Disability | Class 2 only |
| LM-8L79 | Dependent Life | Class 2 only |

GROUP INSURANCE POLICY

SCHEDULE OF BENEFITS (Cont'd)

Class 2
DEPENDENT LIFE INSURANCE

| Amount of Life Insurance: | Plan A | Plan B | Plan C |
|---|---|---|---|
| Dependent Spouse | $5,000 | $10,000 | $15,000 |
| Dependent Child - Age at Death: | | | |
| Birth to 6 months of age | $1,000 | $2,000 | $3,000 |
| 6 months to 19 years of age | $1,000 | $2,000 | $3,000 |
| 19 years to 25 years of age  (if eligible) | $1,000 | $2,000 | $3,000 |

*"Basic Annual Earnings" means an employee's earnings for normal work weeks established by the Policyholder for his job classification, including sales commission, but excluding bonus and overtime pay.

*An increase or decrease in an employee's amount of insurance, due to a change in his earnings, will be effective on the date of the change.

In no event shall the Amount of Dependent Life Insurance provided above exceed 50% of the employee's insurance provided under the Policy.

**Supplemental Life Insurance amounts in excess of $75,000. require satisfactory evidence of insurability.

Changes in amounts of insurance due to a change in an employee's classification shall be effective on the date of the classification change.  However, if the employee is not actively at work on the date the amounts of insurance would otherwise increase, the effective date of any increase will be deferred until the day he returns to work.

LINA 0009

GROUP INSURANCE POLICY

## PERMANENT TOTAL DISABILITY BENEFIT

If a covered employee:
  a) has been covered by this policy for at least 6 months; and
  b) becomes permanently disabled before his 60th birthday; and
  c) is so disabled for at least 12 months; and
  d) sends us proof that he is so disabled not more than 12 months after he
     became disabled;
then we will pay him his life insurance benefit in monthly installments.

The covered employee will be considered Totally Disabled if:
  a) he is completely unable to engage in any occupation or employment for which he
     is or may become qualified because of education, training or experience; and
  b) he is not engaged in any occupation or employment for remuneration or profit; or
  c) he has entire and irrecoverable loss of sight of both eyes or the use of both
     hands or both feet or of one hand and one foot.

Table of Monthly Installments

| Number of Months | Installments per $1,000 of Life Insurance |
|---|---|
| 60 | $17.91 |
| 72 | $15.14 |
| 84 | $13.16 |
| 96 | $11.68 |
| 108 | $10.53 |
| 120 | $ 9.61 |
| 132 | $ 8.86 |
| 144 | $ 6.24 |
| 156 | $ 7.71 |
| 168 | $ 7.26 |
| 180 | $ 6.87 |
| 192 | $ 6.53 |
| 204 | $ 6.23 |
| 216 | $ 5.96 |
| 228 | $ 5.73 |
| 240 | $ 5.51 |

The first installment will be due six months after the disability began if his claim is
approved by that date. If the claim is not approved by that date, installments will be
due three months after the date it is approved. The employee may elect to receive
monthly payments for a period of no less than 5 years and no more than 20 years. If he
dies before the full amount has been paid, we will pay the rest in a lump sum to his
beneficiary, as set forth on page 7.

After he has been permanently disabled for 12 months, and while he is so disabled:
  a)   No charge will be made for his life insurance premium.
  b)   If this policy provides other benefits, he will not be covered for them.
  c)   We may require proof of his continued disability at any time but, not more
       than once a year after the first two years following the date his claim was
       approved.

If the covered employee recovers and returns to active work, he will be insured for the
unpaid balance.

(Continued)

LINA 0010

PERMANENT TOTAL DISABILITY BENEFIT (continued)

This coverage will end when any of these things happen:
    a)    after he is no longer disabled.
    b)    fails to provide proof that he is disabled.

The covered employee may apply for individual life insurance policy.

Monthly installments will be made to the covered employee unless he is mentally incapacitated. In this case, we may then pay the monthly installments to his beneficiary, as trustee for him. Two doctors must certify the mental capacity.

GROUP INSURANCE POLICY

## PAYMENT OF CLAIMS

**Beneficiary** - Benefits paid on account of the death of a covered employee will be paid to the beneficiary he has chosen. This choice must be in writing and filed with you or at our home office. The employee may change the beneficiary by sending us written notice. He does not need the beneficiary's consent.

No selection or change of beneficiary will take effect unless it has been duly filed; but if it is so filed it will take effect on the date he signed it, even if he dies before it is filed. Any payment we make before it is filed fulfills our duty to pay that amount.

If a beneficiary dies before the employee, his interest will end; his share will be paid in equal shares to the other beneficiaries, if there are any. This does not apply if other arrangements have been made.

If the employee has not chosen a beneficiary, or if there is no beneficiary alive when he dies, we will pay benefits:
1) to his spouse, if living.
2) If not, in equal shares to his living children.
3) If there are none, in equal shares to his living parents.
4) If there are none, in equal shares to his living brothers and sisters.
5) If there are none, to his estate.

If a beneficiary is a minor, or can not give a valid release, we will pay:
1) his duly appointed guardian or committee, if payment is requested.
2) If not, we may pay a person or institution who we think has assumed the custody and chief support of the beneficiary. In that case, we will pay $100.00 at first and $50.00 per month after that. Payment to any such person fulfills our duty to pay that amount; we are not responsible for how the money is used.

**Optional Modes Of Settlement** - instead of a lump sum payment, the employee (while living) or the beneficiary (after the employee's death) may choose installment payments from one of the settlement options we are then offering. The employee may at any time before his death revoke or change his choice. Any such choice must be in writing.

LINA 0012

GROUP INSURANCE POLICY

LIFE INSURANCE COMPANY OF NORTH AMERICA
1600 ARCH STREET, PHILADELPHIA, PA 19101        (Non-Participating)
A STOCK INSURANCE COMPANY

RECEIVED

Policy Number:   GL-13814      State of Delivery:  AZ

Effective Date:  January 1, 1989      Anniversary Date:  Each January 1

Premium Due Dates:  Monthly in advance on the first day of each month.

In return for the payment of premiums, we, the Life Insurance Company of North America, agree with you,

FUJITSU BUSINESS COMMUNICATION SYSTEMS, INC.

(the Policyholder)
to provide the benefits described in this policy to all eligible persons who are enrolled according to the terms of the policy.

This policy shall begin on the effective date shown above, at 12:01 a.m. standard time at your address. The policy will stay in force as long as the premium is paid, until it is terminated by you or us (see page 8).

This policy shall be governed by the laws of the state in which it is delivered. As used in this policy, "he" and "his" includes "she" and "her".

IN WITNESS WHEREOF, we have signed this policy at Philadelphia, Pennsylvania.

GORDON L. MURPHY, President

Registrar

TABLE OF CONTENTS

Eligible Classes.............................................2
Enrollment; Termination......................................3
Conversion Privilege.........................................4
Premiums; Grace Period.......................................5
Schedule Of Benefits.........................................6
Payment Of Claims............................................7
General Provisions...........................................8
Description Of Coverages;Exclusions....................Insert

REVISED AND REISSUED EFFECTIVE MAY 1, 1990

GROUP INSURANCE POLICY

### INDIVIDUAL INSURANCE

**Eligible Persons** - No Eligible Person may be covered more than once under this Policy. If he is covered as an Employee, he cannot be covered as a spouse or dependent child of another Employee, even though he may be eligible under more than one class. The classes of persons listed below may be covered by this Policy:

All active, full-time employees of the Policyholder classified as follows:

        Class 1.......................................Non-Union employees
        Class 2.......................................Union employees

Eligible employees of Federal Business Systems, Inc., subsidiary to or affiliated with the Policyholder shall be considered employees of the Policyholder.

An employee who works the number of hours in the normal work week established by the Policyholder, but not less than 20 hours per week shall be considered a full-time employee of the Policyholder.

**Eligible Dependents:** An employee's eligible dependents are his spouse (unless legally separated) and his unmarried children from birth to nineteen years of age. Unmarried children from nineteen to twenty-five years of age may also be covered if they 1) are chiefly dependent upon the employee for support and maintenance, 2) have the same permanent address and 3) are students attending a school, college or university on a full-time basis.

"Children" means the employee's own children and any step-children, foster children and other children who depend upon the employee for support and live with the employee in a regular parent-child relationship.

In no event will a Dependent Child be eligible to become insured by more than one eligible Employee.

If an unmarried dependent child becomes ineligible by reaching a maximum age, coverage will stay in force if the child can not earn a living because of mental retardation or physical handicap. To keep this coverage in force, the employee must provide us with proof that the child is disabled no more than 31 days after the child reaches the maximum age. We may later require proof that the child is still disabled, but not more than once a year after two years.

**Eligibility Dates** - An employee may enroll for coverage as follows:

With respect to Class 1:
He is eligible on the first day of active employment.

With respect to Class 2:
1) Immediately if he is in an eligible class on the effective date of the policy.
2) On the first day of the month following completion of 30 days of employment in an eligible class if he is not in an eligible class on the effective date of the policy. Eligible on the first day of active employment.

If an employee has in force a policy of life insurance converted from group insurance provided by this policy, he will not become eligible until either:
    a)   he has provided, at no expense to us, medical evidence that he is insurable; or
    b)   he surrenders the converted policy to us.

## GENERAL PROVISIONS

**Entire Contract;Changes** - This policy, your application, and the requests of employees for coverage is the entire contract. No change in this policy is valid unless it has been approved by one of our executive officers. This approval must be attached to or endorsed on this policy. No agent may change this policy or waive any provision. This policy may be changed at any time by written agreement between you and us; no other person's consent is needed.

Except in case of fraud, all statements contained in the applications are representations and not warranties. No such statement may be used to deny a claim unless it is contained in a signed application.

**Termination Of The Policy** - Either you or we may terminate this policy on any premium due date. At least 31 days' written notice to the other is required. This policy will also be terminated if premiums are not paid within the grace period of 31 days after they are due. Termination will not affect a claim for a loss which occurs while the policy is in force.

**Incontestable** - We may not contest this policy after it has been in force for 2 years, except for non-payment of premiums. We may not use statements by a person which relate to whether or not he is insurable:
- a)  If they are not in an application signed by him, a copy of which has been given to him; or
- b)  after he has been covered for 2 years during his lifetime.

**Insurance Data** - You shall provide to us any information which may reasonably relate to insurance under this policy. We may inspect your records which affect this insurance at any reasonable time.

**Clerical Error** - A person's coverage will not be affected by error or delay in keeping records of insurance under this policy. If such an error or delay is found, the premium will be adjusted fairly.

**Misstatement Of Facts** - If a fact which affects a person's coverage has not been correctly reported, the correct information will be used to judge whether coverage is in force, and in what amount.

**Assignment** - If an employee assigns his rights or benefits from this policy, he must do so in writing. We will not be bound until we receive and have acknowledged a signed copy of it.  We are not responsible for its validity or sufficiency.

This insurance may not be levied on, attached, garnished, or otherwise taken for a person's debts. This does not apply where it is contrary to law.

**Certificates Of Insurance** - We will provide you with individual certificates of insurance, to be delivered to your covered employees. These will describe the benefits and basic provisions of this insurance, and will state to whom benefits are payable. An employee may have only one certificate in force at one time under this policy. If he has more than one, then he (or his beneficiary or estate, if he is dead) may choose which one will be in force. We will return the premiums paid for the others.

**Examination Of The Policy** - This policy may be examined at your office or the office of the administrator.

LINA 0013

GROUP INSURANCE POLICY

## LIFE INSURANCE BENEFIT

If an employee dies while he is covered by this policy, we will pay the life insurance benefit shown in the Schedule of Benefits on page 6. We will pay this amount as soon as we receive due proof of his death. This benefit is subject to all of the terms of this policy.

## BENEFICIARY

Benefits for the death of a covered employee will be paid to his beneficiary. These terms are set forth in detail on page 7.

GROUP INSURANCE POLICY

## SUPPLEMENTAL LIFE INSURANCE BENEFIT

We will pay the supplemental life insurance benefit if an employee dies while he is covered for this benefit. The amount of this benefit is shown in the Schedule of Benefits on page 6. We will pay this amount as soon as we receive due proof of his death.

**Beneficiary** - This benefit will be paid to the employee's beneficiary. These terms are set forth in detail on page 7.

**Eligible Classes** - The classes of employees who may be covered for this benefit are set forth in the Schedule of Benefits on page 6.

**Enrollment** - An employee may enroll for this benefit by making a written request on forms supplied by us, and by agreeing to pay the required premium contribution.

**Medical Evidence Of Insurability** - We may require the employee to provide, at no expense to us, medical evidence that he is insurable, if:
   a)   less than 75% of those eligible apply for this benefit; or
   b)   the employee applies more than 31 days after he first becomes eligible for this benefit; or
   c)   the employee's total life insurance benefit (basic plus supplemental) exceeds the maximum amount shown in the Schedule of Benefits on page 6. In this case medical evidence will only be required for the excess coverage.

**Effective Date** - An employee's coverage will begin on the date we approve his application, subject to all of the above terms.

If the employee is absent from work, because of injury or sickness, on the date his coverage would begin, his coverage will not begin until he has returned full time to the duties of his work.

**Termination** - This coverage will end when the employee is no longer in a class eligible for this benefit. This is in addition to the termination provisions on page 3.

GROUP INSURANCE POLICY

## WAIVER OF PREMIUM BENEFIT

We will not require any further life insurance premium to be paid for a covered employee:
   a) after he has given us proof that he is disabled; and
   b) after he has been disabled for 9 straight months; and
   c) if he became disabled before his 60th birthday.

A covered employee will be deemed "disabled," as used here, only if he can not do any work for wage or profit.

He must give us proof that he is disabled not more than 12 months after he became disabled, and every 12 months after that. If he dies before such proof has been given, we will still pay the life insurance benefit, as long as such proof is given not more than 12 months after he became disabled. We may have him examined as often as reasonably necessary while he is disabled, but not more than once a year after two years.

The employee will still be covered for the life insurance benefit. No charge will be made for his premium. If this policy provides other benefits, he will not be covered for them while his premium is waived. The benefit will be the lesser of:
   a) the amount he was covered for when he became disabled; and
   b) the amount he would be covered for if he were not disabled.
We will only pay this benefit if written notice of claim is sent to our home office not more than 12 months after his death. Except for the above, all other terms of the policy will apply.

This coverage will end when any of these things happen:
   a) 31 days after he is no longer disabled, if premium payments are not resumed.
   b) 31 days after he is no longer eligible, for any reason other than being disabled.
   c) 31 days after he refuses to be examined or fails to provide proof that he is disabled, as required above.

During this 31 day period, the covered employee may apply for an individual life insurance policy. These terms are set forth in detail on page 4 under "Conversion Privilege."

## DEPENDENT LIFE INSURANCE

ELIGIBLE DEPENDENTS - The classes of dependents described on page 2 may be covered by this policy. An employee's dependents may only be covered while the employee is covered.

As used in this section:
"Dependent" means only a dependent who is eligible to be covered by this policy.
"Covered dependent" means a dependent who is covered by this policy, according to the terms set forth below.

Enrollment - An employee may enroll his dependents by making a written request on forms supplied by us, and by agreeing to pay the required premium contribution.

Contribution - Premium contributions are required to cover dependents.

Effective Date - Insurance will take effect on the policy effective date, for all dependents who have been enrolled by then.

A dependent who later becomes eligible may be insured as follows:
a)  If he is enrolled before he becomes eligible, his coverage will begin on the date he becomes eligible.
b)  If he is enrolled within 31 days after he becomes eligible, his coverage will begin on the date we receive the employee's request.
c)  If he is enrolled after that, his coverage will begin on the date we approve the employee's request. In this case we may require the employee to provide, at no expense to us, medical evidence that the dependent is insurable.

If the dependent cannot perform the normal activities of a person of his age and sex, on the date his coverage would begin, his coverage will not begin until he is so able.

Termination - A dependent's coverage will end when any of these things happen:
a)  When the employee's coverage ends.
b)  When the dependent is no longer in an eligible class.
c)  At the end of the period for which a contribution has been made, if the employee fails to make a contribution for the dependent's coverage required by this policy.

Conversion Privilege - The Conversion Privilege, set forth on page 4, shall also apply to dependents.

Life Insurance Benefit - If a dependent dies while he is covered by this policy, we will pay the life insurance benefit shown in the Schedule of Benefits on page 6. We will pay this amount as soon as we receive due proof of his death. This benefit is subject to all of the terms of this Policy.

Beneficiary - Life insurance benefits paid on account of the death of a covered dependent will be paid to the employee, if he is living. If not, we will pay the dependent's estate. This does not apply if other arrangements have been made.

LINA 0017

E INSURANCE COMPANY OF NORTH       CA
Philadelphia, Pennsylvania

We, FUJITSU BUSINESS COMMUNICATIONS SYSTEMS, INC.,

whose main office address is Tempe, AZ,

hereby apply to the Life Insurance Company of North America for Group Policy

No. GL-13814.

We approve and accept the terms of this Group Policy.
This application is to be signed in duplicate.  One part is to be attached to the Group
Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

FUJITSU BUSINESS COMMUNICATIONS SYSTEMS, INC.
(Full or Corporate Name of Applicant)

Signed at_____  By_____
                                                        (Signature and Title)

On_____  Witness_____
           (To be signed by Licensed Resident Agent where required by law)

LM-1K59       (This Copy Is To Remain Attached To The Policy)

------------------------------------------------------------------------------

LIFE INSURANCE COMPANY OF NORTH AMERICA
Philadelphia, Pennsylvania

We, FUJITSU BUSINESS COMMUNICATIONS SYSTEMS, INC.,

whose main office address is  Tempe, AZ,

hereby apply to the Life Insurance Company of North America for Group Policy

No. GL-13814.

We approve and accept the terms of this Group Policy.
This application is to be signed in duplicate.  One part is to be attached to the Group
Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

FUJITSU BUSINESS COMMUNICATIONS SYSTEMS, INC.
(Full or Corporate Name of Applicant)

Signed at_____  By_____
                                                        (Signature and Title)

On_____  Witness_____
           (To be signed by Licensed Resident Agent where required by law)

LM-1K59       (This Copy Is To Be Returned To Us)

LINA 0018

**Jeff Vaupel**
Technical Specialist
Life & Accident Claim Services



**CIGNA** Group Insurance
Life · Accident · Disability

August 22, 2007

Routing 250
P.O. Box 22326
Pittsburgh, PA 15222-0326
Telephone 1-800-238-2125
Facsimile (412) 402-3506

ANDY CHAN
5955 CENTRAL AVENUE
NEWARK, CA 94560

RE:   **Claimant's Name:**      **Andy Chan**
      **Date of Birth:**         ████1949     *REDACTED*
      **Policy Number:**         **GL-13814**
      **Policyholder:**          **Fujitsu Business Communications**
      **Underwriting Company:** **Life Insurance Company of North America**

Dear Mr. Chan:

We are writing in reference to your appeal for Permanent Total Disability benefits under your
Group Life Insurance policy through Fujitsu Business Communications and Life Insurance
Company of North America.

According to the terms of your policy, total disability for the purpose of permanent total
disability benefits is defined as follows:

**Totally Disabled**

*"The covered employee will be considered Totally Disabled if:"*

  a) *he is completely unable to engage in any occupation or employment for which he is or may
     become qualified because of education, training or experience; and*
  b) *he is not engaged in any occupation or employment for remuneration or profit; or*
  c) *he has entire and irrecoverable loss of sight of both eyes or the use of both hands or both feet
     or of one hand and one foot."*

As you are aware, your claim was denied based on the medical information not supporting
continued total disability as defined above. As indicated, to be considered totally disabled for
the purpose of filing for permanent total disability benefits under your policy, the medical
evidence submitted must support and document that you are completely unable to engage in
any occupation or employment for which you are or may become qualified because of
education, training or experience, you are not engage in any occupation or employment for
remuneration or profit, or have suffered an entire and irrecoverable loss of sight in both eyes,
use of both hands, use of both feet or the use of one hand and one foot. For a detailed
explanation of our reasons for denying your claim, please refer to our letter dated May 2,
2007.

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are
provided by operating subsidiaries and contracted companies and not by CIGNA Corporation. Operating subsidiaries include Life Insurance Company of North
America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

Andy Chan
August 22, 2007
Page 2

Our letter dated May 2, 2007 advised you of our decision to deny your application for permanent total disability benefits as described above. Furthermore, our letter advised you that if you wished to request a review of this determination, you would need to make this request to Life Insurance Company of North America in writing and submit medical documentation to support a condition of Total Disability as defined by your policy. You were advised that this evidence should include, but is not limited to:

❑ A narrative report from an appropriately specialized physician regarding any physical limitations. This should include a copy of office records for the period of November 2005 to the present; and/or
❑ Any medical tests or procedures from November 2005 to the present that indicate any additional abnormalities; and/or
❑ A complete copy of office records from your physician for the period of November 2005 to the present, including, but not limited to, X-rays, CT Scans, EMG reports, Positive physical exam findings, hospital records, consultation reports, physical therapy notes and treatment/progress notes; and/or
❑ A copy of an Independent Medical Examination report from a qualified physician performed within the past year; and/or
❑ Any other information, which you believe, would support your position of total disability from any occupation.

We received notice of your intention to appeal the decision on your claim and the following documentation submitted for our consideration:

• Narrative letter from Dr. Wesley Lisker dated June 7, 2007

We have thoroughly reviewed the information submitted with your appeal, as well as your entire claim and have rendered a decision based on the information contained within your file.

As you are aware, your claim was denied when it was determined that the medical evidence submitted for our consideration did not support that you are totally disabled as defined under the terms of your policy. More specifically, that the medical information provided supported that you retained the ability to function in a sedentary work capacity as defined by the Dictionary of Occupational Titles (DOT) and because you have the transferable skills necessary to perform within this level of activity.

On March 23, 2007, you underwent an Independent Medical Examination with Dr. Kenneth Hammerman. Based on this examination, Dr. Hammerman completed a physical ability assessment form. On this form, it was noted that with consideration of your diagnosis and symptoms, you are capable of performing the following in an 8-hour workday:

| | |
|---|---|
| Sitting | Frequently |
| Standing | Occasionally |
| Walking | Occasionally |
| Reaching (overhead) | Frequently |

Andy Chan
August 22, 2007
Page 3

| | |
|---|---|
| Reaching (desk level) | Frequently |
| Reaching (below Waist) | Frequently |
| Fine Manipulation (bilaterally) | Continuously |
| Simple Grasp (bilaterally) | Continuously |
| Firm Grasp (bilaterally) | Frequently |
| Lifting (up to 10 lbs.) | Occasionally |
| Carrying (up to 10 lbs.) | Occasionally |
| Pushing (up to 10 lbs.) | Occasionally |
| Pulling (up to 10 lbs.) | Occasionally |
| Climbing (regular stairs) | Occasionally |

For your reference, continuously, frequently and occasionally were quantified on this form as follows; continuously (67-100%), frequently (34% to 66%) and occasionally (0% to 33%).

Given the medical restrictions and limitations that were outlined by Dr. Hammerman and are supported by the medical evidence on file, we conducted a Transferable Skills Analysis. A Transferable Skills Analysis is a method of determining whether you can apply previously learned work skills and education to different but related occupations within your restrictions and limitations. The following positions were identified as especially well suited for you:

| Occupational Title | DOT# |
|---|---|
| Customer Service Representative | 239.362-014 |
| Protective-Signal Operator | 379.362-014 |
| Service Clerk | 221.367-070 |
| Order Clerk | 249.362.026 |
| Registration Clerk | 205.367-042 |
| Check Cashier | 211.462-026 |
| Telephone Solicitor | 299.357-014 |

We would like to note that the Transferable Skills Analysis was performed by a Certified Vocational Rehabilitation Consultant and that the above occupations are outlined in the Dictionary of Occupational Titles and can be referenced by the number outlined above. In addition, we would also note that the above outlined are not inclusive of all suitable positions identified in the Transferable Skills Analysis.

The positions outlined above are within the sedentary and light job classification as outlined in the Dictionary of Occupation Titles. For your reference, the Dictionary of Occupational Titles defines sedentary work as follows:

Sedentary Work:- Exerting up to 10 pounds of force occasionally (Occasionally; activity or condition exists up to 1/3 of the time) and/or negligible amount of force frequently (Frequently; activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Andy Chan
August 22, 2007
Page 4

Again, we would like to note that the positions outlined in the transferable skills analysis are consistent with the physical abilities and restrictions outlined and are within the sedentary and light job classification as outlined in the Dictionary of Occupation Titles.

To complete our evaluation, we conducted a Labor Market Survey to determine if the occupations identified in the Transferable Skills Analysis were available within your geographic area. The Labor Market Survey identified job openings and verified existing positions within your geographic area. These positions are well within your past work experience and educational level. The positions identified are as follows:

| | |
|---|---|
| Position: | Telemarketer |
| Employer: | Cornerstone Funding |
| | |
| Position: | Dispatcher |
| Employer: | First Alarm |
| | |
| Position: | Customer Service |
| Employer: | Jenny Craig |
| | |
| Position: | Customer Service-Concierge |
| Employer: | BMW of San Francisco |
| | |
| Position: | Customer Care Representative |
| Employer: | Dynamic Staffing |
| | |
| Position: | Call Center Representative |
| Employer: | Alkar Human Resources |

We would again like to note that the Labor Market Survey was performed by a Certified Vocational Rehabilitation Consultant. In addition, the positions outlined above in the Labor Market Survey are within the sedentary classification as outlined in the Dictionary of Occupation Titles.

Submitted for our consideration of your claim was a narrative letter dated June 7, 2007 from Dr. Wesley Lisker. In his letter, Dr. Lisker indicates that he was responding to our April 18, 2007 letter asking him to review the independent medical examination report of Dr. Hammerman. For your reference, our April 18, 2007 letter asked Dr. Lisker to review the report of Dr. Hammerman and provide an indication as to whether he agreed or disagreed with the findings. In addition, we advised Dr. Lisker that if he disagreed with the report of Dr. Hammerman, to provide medical evidence in support his position which should include, but is not limited to: medical records, consultative reports, operative reports, hospital admissions and discharge summaries, chest x-rays, and other therapy notes.

Dr. Lisker indicates in his letter that he has reviewed the independent medical examination report and noted the following assessment provided by Dr. Hammerman:

Andy Chan
August 22, 2007
Page 5

*"Mr. Chan has multiple medical problems. On exam he did demonstrate generalized weakness. He walked slowly. He was minimally dyspneic on walking. He was able to sit without difficulty. He was alert and oriented and quite cooperative through the interview and exam process.*

*Mr. Chan is mildly Cushingoid on exam secondary to his chronic steroid use and does have some evidence of some mild muscle atrophy.*

*In my opinion, because of his multiple medical problems and multiple medications, I would consider Mr. Chan physically impaired. He does exhibit significant generalized weakness, lack of stamina, and dyspnea on exam. Please review the enclosed Physical Ability Assessment form for any restrictions and/or limitations."*

Upon his review of Dr. Hammerman's comments, Dr. Lisker indicates that he believes that this is sufficient evidence to vouch for your continued total disability. In considering Dr. Lisker's comments, we acknowledge that Dr. Hammerman has stated that you are physically impaired. However, Dr. Hammerman goes on to further to quantify your physical impairments by outlining your specific restrictions and/or limitations on the Physical Abilities Assessment form completed on March 23, 2007. Upon review of the specific restrictions and/or limitations outlined, we have determined that you retain the functional ability necessary to perform employment within the sedentary duty demand level as defined by The Dictionary of Occupation Titles.

Dr. Lisker's letter of June 7, 2007 goes on to comment on the physical abilities assessment form completed by Dr. Hammerman. More specifically, Dr. Lisker stated the following:

*"In my opinion, Mr. Chan is at the lower end of the "occasional" scale, and I would not recommend him standing or walking for 2.5 hours, based upon his medical condition. I also believe that Mr. Chan overestimated his ability to continuously do fine manipulation, simple grasps, and firm grasps, based upon the hours and the ranges that are listed under the notation "continuously and frequently.*

*He noted also that he could reach overhead for between 2.5 and 5.5 hours. Again, I think he overestimated the amount of time he could do these activities and believe him to be seriously and permanently disabled."*

Dr. Lisker goes on to further explain he has based his estimation of your abilities on his experience taking care of transplant patients. Dr. Lisker indicates that as is typical for many patients with a lengthy duration of steroid treatment and exposure to chronic immunosuppressant medication, there is generalized weakness and poor stamina. He also states that the physical abilities assessment form does not clearly indicate the very lowest levels of your abilities and therefore, he is unable to agree with the assessment that you are capable of any gainful employment. Dr. Lisker concludes that he believes that the physical abilities assessment form has overrated your abilities, and therefore strongly disagreed with the findings made in reference to your disability determination.

LINA 0023

Andy Chan
August 22, 2007
Page 6

While we acknowledge the opinion and conclusions noted by Dr. Lisker concerning your restrictions and limitations as they relate to your overall level of functioning, he did not provide any supporting medical evidence, including clinical or diagnostic findings, on which he relied upon in rendering these conclusions.

Our determination on your appeal is based on a clinical review of all your available office and treatment records, as well as an assessment by our medical staff. We appreciate and carefully consider all medical opinions and we also appreciate Dr. Lisker's willingness to continue to be supportive of your claim. However, the clinical documentation fails to support a significant physical condition to preclude you from engaging in any occupation or employment for which you are or may become qualified based on your education, training or experience. The evidence supports that while you do have a degree of physical impairment as identified by Dr. Hammerman, it fails to support restrictions and/or limitations severe enough to support a continuous and complete lack of work capacity.

Following a review of the medical evidence, we are unable to conclude that the diagnostic testing, clinical examination findings, and other medical data support a degree of impairment that would render you unable to engage in any occupation or employment for which you are or may become qualified based on education, training or experience. More specifically, the medical evidence supported, based on restrictions and limitations outlined by Dr. Hammerman, that you retain the work capacity to perform in the sedentary demand level as outlined by the Dictionary of Occupational Titles.

We have considered all of the medical information provided to date in conjunction with your education, training, and past work experience in rendering our decision. In reviewing your claim, Life Insurance Company of North America considered your claim file as a whole for the purpose of determining your entitlement to benefits under the above referenced policy.

Please note that the above policy definition of "totally disabled" is not specific to your former occupation or your former job with your former employer. In order to be eligible for waiver of premium, the above cited policy requires you are unable to engage in any occupation or employment for which you are or may become qualified based on education, training or experience. This definition of "totally disabled" would also necessitate the lack of capacity to sustain even part-time or modified work. Permanent total disability benefits are intended and designed to be available to those individuals completely unable to sustain working in any capacity.

We recognize that you may be unable to return to your past job and that the positions identified are not available with the Fujitsu Business Communications. However, your policy defines total disability as the inability to engage in any occupation or employment for which you are or may become qualified based on education, training or experience. In considering the terms of your policy, the medical evidence submitted supports that you are capable of performing less demanding work, more specifically, sedentary work as defined by the Dictionary of Occupational Titles. While the positions outlined in the transferable skills analysis may not be available with the Fujitsu Business Communications, they are available positions within the national economy.

LINA 0024

Andy Chan
August 22, 2007
Page 7

Based on our review of your claim, we must advise you that our original decision denying
benefits will remain unamended. The medical evidence supports that you retain the
functional ability and transferable skills necessary to perform occupations as they are defined
in the Dictionary of Occupational Titles. For this reason, you do not satisfy the definition of
disability as it is defined in your policy and as explained to you in our letter dated May 2,
2007. We regret that our decision could not be more favorable on your claim.

Please be advised that you have exhausted all administrative levels of appeal with Life
Insurance Company of North America and that no further appeals will be considered.

Nothing contained in this letter should be construed as a waiver of any rights or defenses
under the policy. This determination has been made in good faith and without prejudice
under the terms and conditions of the contract, whether or not specifically mentioned herein.

Sincerely,


Jeff Vaupel
Technical Specialist

LINA 0025

**Derek Brown**
Case Manager
Life & Accident Claim Services



CIGNA

July 2, 2007

Routing 250
P.O. Box 22326
Pittsburgh PA 15222-0326
Telephone 1-800-238-2125
Facsimile (412) 402-3506

Andy Chan
5955 Central Ave.
Newark, CA 94560

RE:  **Claimant's Name:**          **Andy Chan**
     **Date of Birth:**            ▮▮▮▮1949
     **Policy Number:**            **GL-13814**
     **Policyholder:**             **Fujitsu Business Communications**
     **Underwriting Company:** **Life Insurance Company of North America**

Dear Mr. Chan:

We are in receipt of your request for review of the denial of your claim for Total &
Permanent Disability benefits which was denied on May 2, 2007.

We will review your claim and you will be notified as soon as a decision is made. If you wish
to submit new or additional medical documentation to support the appeal of your claim, we
would be more than happy to include it in our review. Please be advised that if we do not
receive any new or additional information within 30 days, we will review your file and
render a decision on your appeal based on the information currently in your file.

Under normal circumstances, you will be notified of the decision within 30 days from the
date the appeal is received. If additional time is needed, we will notify you of the reason for
the delay. Please be aware that as part of the appeals process, you may have access to
information relevant to your claim, which will be provided to you upon request free of
charge.

We will contact you if any additional information from you is required.  Should you have
any questions, you can reach our office at 1.800.238.2125.

Sincerely,

Derek Brown
Case Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are
provided by operating subsidiaries and contracted companies and not by CIGNA Corporation. Operating subsidiaries include Life Insurance Company of North
America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

# The Permanente Medical Group, Inc.

GREATER SOUTHERN ALAMEDA AREA
HAYWARD & FREMONT MEDICAL CENTERS

27400 HESPERIAN BOULEVARD          39400 PASEO PADRE PARKWAY
HAYWARD, CALIFORNIA 94545          FREMONT, CALIFORNIA 94538

| | | |
|---|---|---|
| Alamed | Martinez | Sacramento |
| Antioch | Milpitas | San Francisco |
| Campbell | Modesto | San Jose |
| Chico | Mountain View | San Rafael |
| Daly City | Napa | Santa Clara |
| Davis | Novato | Santa Rosa |
| Elk Grove | Oakland | Selma |
| Fairfield | Park Shadelands | S. Sacramento |
| Edison | Petaluma | S. San Francisco |
| Fremont | Pleasanton | Stockton |
| Fresno | Rancho Cordova | Tracy |
| Gilroy | Redwood City | Vacaville |
| Hayward | Redwood Park | Vallejo |
| Livermore | Richmond | Walnut Creek |
| Manteca | Roseville | |

BARRY SCURRAN, D.P.M.          CALVIN WHEELER, M.D.
Physician-in-Chief             Physician-in-Chief

June 7, 2007

Mr. Derek Brown – Case Manager
Cigna – Life claim administration
Routing 250
P.O. Box 22326
Pittsburg, PA 15222-0326

RE:   CHAN, ANDY
MR#  03940340
POLICY NO: GL-13814

Dear Mr. Brown:

This is in response to Mr. Andy Chan's recent letter from you of May 2, 2007, indicating that his disability claims have been terminated.

I received from you on or about April 18, 2007, a letter in which you asked me to review the independent medical evaluation done by Dr. Kenneth Hammerman. You asked that I review a copy of his evaluation to determine if I agreed or disagreed with the findings. If I did not agree, you requested I provide additional medical records, consultative reports, operative reports, hospital admissions and discharge summaries, chest x-rays, my results, and other therapy notes from January of 2006 to the present to support Mr. Chan's disability.

I reviewed Dr. Hammerman's note and made the following observations at that time.

Dr. Hammerman noted, "Mr. Chan has multiple medical problems. On exam, he did demonstrate generalized weakness. He walked slowly. He was minimally dyspneic on walking. He was able to sit without difficulty. He was alert and oriented and quite cooperative." Dr. Hammerman noted that Mr. Chan was mildly cushingoid, due to chronic steroid use and had evidence of mild muscle atrophy. In his opinion, Dr. Hammerman felt that Mr. Chan was physically impaired with signs of significant generalized weakness, lack of stamina, and dyspnea on examination. I believed this was sufficient evidence to vouch for his disability.

Included with Dr. Hammerman's letter was a physical ability assessment form, which I reviewed as well. This form had various boxes checked, may of which were on the far right. These checked boxes referred to "occasionally," which was further defined as "from 1-33% or less than 2.5 hours per day may be engaged in the activity."



**KAISER PERMANENTE** ®

04604-514 (4-06)

LINA 0027

June 7, 2007

RE:   CHAN, ANDY
MR#  003940340
Page  2

In my opinion, Mr. Chan is at the lower end of the "occasional" scale, and I would not recommend him standing or walking for 2.5 hours, based upon his medical condition. I also believe that Mr. Chan overestimated his ability to continuously do fine manipulation, simple grasps, and firm grasps, based upon the hours and the ranges that are listed under the notation "continuously and frequently."

He noted also that he could reach overhead for between 2.5 and 5.5 hours. Again, I think he overestimated the amount of time he could do these activities and believe him to be seriously and permanently disabled.

I base my estimation of Mr. Chan's abilities on my experience taking care of transplantation patients for the last 23 years. Mr. Chan had a kidney transplant since 1998. As is typical for many patients with this lengthy duration of steroid treatment and exposure to chronic immunosuppressant medications, there is generalized weakness and poor stamina. Your assessment form does not clearly indicate the very lowest levels of the abilities of these patients, and makes me unable to agree with your assessment that the patient is still capable of any gainful employment. Particularly, looking at the list of job descriptions, check cashier, telephone solicitor, registration clerk, up through customer service representative, I believe that, and felt Dr. Hammerman agreed, that Mr. Chan is disabled and cannot function in these roles.

Again, in referencing Dr. Hammerman's opinion, I believed at the time that I received the letter that Mr. Chan would be considered to be totally disabled based upon my reading of Dr. Hammerman's assessment. I had no reason to suspect that the data available on the entirely subjective physical ability assessment form would be used to keep Mr. Chan from continuing to receive deserved benefits for disability. I believe that the physical ability assessment form has overrated Mr. Chan's ability. I strongly disagree with the findings that you have made with respect to Mr. Chan's disability determination.

I would appreciate your attention to Mr. Chan's situation and respectfully request that you reconsider your decision.

Sincerely,

Wesley Lisker, MD
Department of Nephrology

WL:km

Derek Brown
Case Manager
Life Claim Administration



**CIGNA**

May 2, 2007

Routing 250
P.O. Box 22326
Pittsburgh PA 15222-0326
Telephone 1-800-238-2125
Facsimile (412) 402-3506

Andy Chan
5955 Central Ave.
Newark, CA 94560

RE:    **Claimant's Name:**        **Andy Chan**
       **Date of Birth:**          ██████1949
       **Policy Number:**          **GL-13814**
       **Policyholder:**           **Fujitsu Business Communication**
       **Underwriting Company:**   **Life Insurance Company of North America**

Dear Mr. Chan:

This letter is in reference to your claim for Total and Permanent Disability Benefits under the provisions of your Group Life Insurance plan with Fujitsu Business Communication.

Under the terms of your Group Life Insurance Policy, you may be eligible to receive the full amount of your Basic Life Insurance in yearly installments under the Permanent Total Disability provision. For the purpose of receiving benefits under this provision, the policy defines Total and Permanent Disability as follows:

"You are considered *Totally Disabled if:*

A)  You are completely unable to engage in any occupation or employment for which you are or may become qualified because of education, training or experience; and

B)  You are not engaged in any occupation or employment for remuneration or profit; or

C)  You have entire and irrecoverable loss of sight of both eyes or the use of both hands or both feet or of one hand and one foot."

"This coverage will end when any of these things happen:

A)  After you are no longer disabled.
B)  Failure to provide proof that you are disabled.

The following medical information has been received and reviewed in connection with your Waiver of Premium claim:

*   Dr. Bharadhwaj – Office notes for the period of November 21, 2005 through November 13, 2006.

*   Dr. Lisker – Attending Physicians Statement dated June 26, 2006.

*   Dr. Kenneth Hammerman – Independent Medical Evaluation and Physical Abilities Assessment Form dated March 23, 2007.

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by operating subsidiaries and contracted companies and not by CIGNA Corporation. Operating subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

Derek Brown
Case Manager
Life Claim Administration


CIGNA

May 2, 2007

Routing 250
P.O. Box 22326
Pittsburgh PA 15222-0326
Telephone 1-800-238-2125
Facsimile (412) 402-3506

Andy Chan
5955 Central Ave.
Newark, CA 94560

RE:   **Claimant's Name:**         **Andy Chan**
      **Date of Birth:**           ████1949          *REDACTED*
      **Policy Number:**           **GL-13814**
      **Policyholder:**            **Fujitsu Business Communication**
      **Underwriting Company:**    **Life Insurance Company of North America**

Dear Mr. Chan:

This letter is in reference to your claim for Total and Permanent Disability Benefits under the provisions of your Group Life Insurance plan with Fujitsu Business Communication.

Under the terms of your Group Life Insurance Policy, you may be eligible to receive the full amount of your Basic Life Insurance in yearly installments under the Permanent Total Disability provision. For the purpose of receiving benefits under this provision, the policy defines Total and Permanent Disability as follows:

"You are considered *Totally Disabled* if:

A) You are completely unable to engage in any occupation or employment for which you are or may become qualified because of education, training or experience; and

B) You are not engaged in any occupation or employment for remuneration or profit; or

C) You have entire and irrecoverable loss of sight of both eyes or the use of both hands or both feet or of one hand and one foot."

"This coverage will end when any of these things happen:

A) After you are no longer disabled.
B) Failure to provide proof that you are disabled.

The following medical information has been received and reviewed in connection with your Waiver of Premium claim:

- Dr. Bharadhwaj – Office notes for the period of November 21, 2005 through November 13, 2006.

- Dr. Lisker – Attending Physicians Statement dated June 26, 2006.

- Dr. Kenneth Hammerman – Independent Medical Evaluation and Physical Abilities Assessment Form dated March 23, 2007.

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by operating subsidiaries and contracted companies and not by CIGNA Corporation. Operating subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

We have now completed our continued investigation of your claim for Total and Permanent Disability Benefits, and we regret to advise you that we are unable to give favorable consideration to the continuation of your claim based on the current medical documentation that we have on file.

According to your initial claim form, you stated that you ceased work on November 4, 1994 due to chronic renal failure.

We recently requested updated information regarding your continued disability. The above mentioned documentation was received from your treating physicians. This information was reviewed in its entirety in conjunction with your disability and the requirements of your policy through Fujitsu Business Communication. This information does not support a continued disability from any occupation as outlined in your policy.

We received a Disability Questionnaire from you dated July 27, 2006 which you self reported the ability to do the following activities:

- Cook 1 ½ hrs 4-6 days a week
- Clean 45-1 hr 1 day a week
- Shop 1-2 hrs 1 day a week
- Laundry 2 hrs 1 day a week
- Read 2 hrs 4-5 days a week
- Watch TV 1 ½ hrs 4-5 days a week
- Walks 45-1 hr 3-4 days a week for about 1 mile
- Other 1 hr (church) 1 day a week

You also indicated that you had no problem attending to yourself.

Based on the information received, our in-house nurse case manager reviewed your file and noted that the medical evidence received does not support the limitations and restrictions outlined by Dr. Lisker. It was noted that you had multiple medical conditions however they were treated and under control. Office notes did not support an impairment of no work at a sedentary level.

Based on the information received and the review of your file by our in-house Nurse Case Manager, it was determined that more information was required to determine what your functional abilities were. Therefore, we notified you of our decision to have you participate in an Independent Medical Evaluation on March 22, 2007.

Dr. Hammerman's conclusion from your Independent Medical Evaluation was that you had multiple medical problems. On exam you did demonstrate generalized weakness and walked slowly. You had minimal dyspneic on walking and were able to sit without difficulty. You were alert, oriented and quite cooperative through your interview and exam process. It was noted that you were mildly Cushingoid on exam secondary to your chronic steroid use and did have some evidence of some mild muscle atrophy. Dr. Hammerman stated, "In my opinion, because of his multiple medical problems and multiple medications, I would consider Mr. Chan physically impaired. He does exhibit significant generalized weakness, lack of stamina and dyspnea on exam. Please review the enclosed Physical Ability Assessment form for any restrictions and/or limitations."

Dr. Hammerman completed a Physical Abilities Assessment form which indicated throughout an 8-hour workday, you could tolerate with positional changes and meal breaks, the following activities for the specified duration:

LINA 0031

**Occasionally (< 2.5 Hours) (1-33%)**

*Standing, walking, lifting and carrying up to 10 pounds, pushing up to 10 pounds, pulling up to 10 pounds, climbing regular stairs and could use your lower extremities for foot controls.*

**Frequently (2.5 – 5.5) (34-66%)**

*Sitting, reaching over head, desk level and below waist, firm grasp both right and left.*

**Continuously (5.5 + hours) (67 – 100%)**

*Fine manipulation both right and left, simple grasp both right and left, seeing, hearing, smell and tasting.*

On April 18, 2007 we sent a fax to both Dr. Lisker and Dr. Bharadhwaj asking them to review the results of your Independent Medical Evaluation and provide comment on whether they agree or disagree with the findings. I asked them to please respond by April 25, 2007 and if they disagreed to please provide clinical documentation to support their disagreement. As of the date of this letter, we have yet to receive a response from your treating physicians.

Based on the aforementioned medical evidence, your education, and your work experience, a Transferable Skills Analysis was performed by a certified Vocational Rehabilitation Specialist. The Transferable Skills Analysis is a method of determining whether you can apply previously learned work skills and education to different but related occupations within your restrictions and limitations. This analysis yielded 6 occupations that would be compatible from an educational, vocational and medical standpoint. All of these jobs fell within the sedentary, medium and light duty job classifications. The following occupations were identified, as defined by the <u>Dictionary of Occupational Titles</u>*(D.O.T.):

| Occupational Title | D.O.T. Reference Number | Work Classification |
|---|---|---|
| Customer Service Rep. | 239.362-014 | Sedentary |
| Protective-Signal Operator | 379.362-014 | Sedentary |
| Service Clerk | 221.367-070 | Sedentary |
| Order Clerk | 249.362-026 | Sedentary |
| Registration Clerk | 205.367-042 | Sedentary |
| Check Cashier | 211.462-026 | Sedentary |
| Telephone Solicitor | 299.357-014 | Sedentary |

*The <u>Dictionary of Occupational Titles</u> can be found in a local library.

The information we have received does not support your claim of total disability from any occupation. The above mentioned information indicates that you are capable of performing work within the sedentary and light duty classifications. The definitions of sedentary and light duty work according to the <u>Dictionary of Occupational Titles</u> are as follows:

<u>Sedentary Work</u> - Exerting up to 10 pounds of force occasionally (Occasionally; activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Following the Transferable Skills Analysis, a Labor Market Survey was performed. This Labor Market Survey was conducted to determine if positions existed in your labor market within your work history, educational history and physical restrictions. There were 10 employers who were contacted and 8 employers had positions that met your work history, educational history and physical restrictions. Enclosed is a copy of the results of your Labor Market Survey.

Based on the medical records received and the assessment of our in-house Nurse Case Manager, it has been determined the information provided does not support and document that you are totally disabled from performing your occupation or any occupation for wage or profit, presumably for life as defined by your policy and outlined above. Therefore, we must regretfully advise you that we are unable to give favorable consideration to your claim.

If you disagree with our determination and intend to appeal this claim decision, you must submit a written appeal. This appeal must be received by us within 180 days of receipt of this letter and should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.

You have the right to submit written comments as well as any new documentation you wish us to consider. If you have additional information, it should also be sent for further review to the address noted on this letterhead, within 180 days of receipt of this letter.

Additional information includes, but is not limited to: physician's office notes, hospital records, consultations, test result reports, therapy notes, physical and/or mental limitations, etc. These medical records should cover the period of November 2005, through the present.

You may also wish to have your physician(s) provide some or all of the following. Additional information includes but is not limited to: physician's office notes, hospital records, consultations, test result reports, therapy notes, physical and/or mental limitations, etc. These medical records should cover the period of November 2005 to the present.  You may also wish to have your physician(s) provide some or all of the following:

- A narrative report from an appropriately specialized physician regarding any physical limitations.  This should include a copy of office records for the period of September 2005 to the present; and/or

- Any medical tests or procedures from November 2005 to the present that indicate any additional abnormalities; and/or

- A complete copy of office records from your physician for the period of November 2005 to the present, including, but not limited to X-rays, CT Scans, EMG reports, positive physical exam findings, hospital records, consultation reports, physical therapy notes and treatment/progress notes; and or

- A copy of an Independent Medical Examination report from a qualified physician performed within the past year; and or

- Any other information, which you believe, would support your position of total disability from any occupation.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter.

LINA 0033

We realize there may be factors of which we are unaware, and if you feel this determination is incorrect, we will be pleased to review any evidence you may wish to submit which will support your claim.

You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office and your State insurance regulatory agency.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits.

Section 2695.7(B) of the regulations of the California Insurance Department requires that our company advise you that if you wish to take up this matter with the California Department of Insurance, you may contact them at:

**California Department of Insurance**
**Claims Services Bureau, 11th Floor**
**300 South Spring Street**
**Los Angeles, CA  90013**

**213.897.5961**
**or**
**1.800.927.HELP**

Under the terms of your Group Insurance contract, you have the right to convert all or part of the $53,600.48 to an Individual policy. We are enclosing a copy of the denial letter and an application, "Conversion of Group or Employee Life to an Individual Policy," that you must complete and send to **NEBCO** along with a check for your first premium at the address provided below within 31 days of the date of this letter. You are under no obligation to purchase this coverage. If you have additional questions about conversion, please call or write to:

**NEBCO**
**P O BOX 152501**
**Irving, TX 75015-2501**
**1.800.423.1282**

Please note: To ensure that you retain coverage, you must submit a copy of the waiver of premium denial letter, completed application and first premium within 31 days of the date of this letter, even if you submit an appeal of our claim decision. If your appeal is granted your conversion policy will be cancelled as of its effective date and any premium paid will be refunded. If you wait to apply for conversion until after the appeal process is completed, it is very likely that you will have missed the deadline for applying.

If you have already converted your coverage, you do not need to complete the application. Please contact **NEBCO** if the amount of coverage you converted does not match the amount offered for conversion in this letter.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Sincerely,


Derek Brown
Case Manager

LINA 0035

```
TRANS NO    01
TRANS TYPE  I          EXP RECVD DT 04 27 2007        PROV NAME      INTRACORP

EXPENSE CD QX          EXP FROM DT  04 24 2007        EXP THRU DT    04 24 2007

CHARGE AMT    400.00   NOT COV AMT            RC      TOTAL PAYABLE    400.00

PROVIDER ID 2 231728483 000

PAYEE CODE   XX
NAME1 INTRACORP, INC./                 N2 INVOICE # 2B599615
ADDR1 5144 COLLECTION CENTER DR        A2
CITY  CHICAGO                 ST/PROV IL   ZIP 60693

DATE PAID   05 01 2007         CHECK NO


NEXT TASK:     FUNCTION:   KEYS : GL              0013814        000
               KEYS CONTINUED   : S554455382 0001 02 590
V989-EXPENSE TRANSACTION COMPLETED
```

LINA 0036

# Intracorp

**INVOICE**

5144 COLLECTION CENTER
CHICAGO, IL  60693

INVOICE NO.
2B599615

| DATE | CUSTOMER NO. |
|------|--------------|
| 04/24/07 | 5CB15222 |

ASE NO.

4045

CIGNA DISABILIT
PO BOX 22326

PITTSBURGH, PA

VINCE ENGEL

*DEREK,*

*4-30-07*

*PLASE PAY INVOICE*

*-Thanks,*
*Jiec*

**IBER
483**

| CLAIMANT |
|----------|
| CHAN ANDY |

| DATE | ACTIVITY | TIME | MILES | EXPENSE |
|------|----------|------|-------|---------|
| 4/19/07 | Internet Review Vocational | | | |
| 4/20/07 | Phone - Employer Vocational | | | |
| | Special Instructions Review Medical | | | |
| | Report - Client/Family Medical | | | |

FLAT RATE                                              400.00

BILLED TO DATE    400.00

UPON RECEIPT, PLEASE SUBMIT PAYMENT WITH INVOICE COPY TO INTRACORP AT:

INTRACORP, INC.
5144 Collection Center Drive
Chicago, Illinois  60693

FOR PAYMENT QUESTIONS CALL:  (800) 289-8194

*Paid 5/1/07 C*
*51107*
*JAb*

INVOICE: 2B599615

TOTAL DUE--->                            400.00

ORIGINAL
IR-6R79 01/2001

PAYABLE UPON RECEIPT

LINA 0037



Clientele Case : 2B34045

LABOR MARKET SURVEY

To: CIGNA DISABILITY MANAGEMENT SOLUTIONS
1600 W Carson
Ste 300
Pittsburgh, PA 152193419
(800) 238-2125

Attention: Vince Engel
Re: Andy Chan

Date of injury: 02/22/2006          Intracorp file number:
DFKRPW11-0001
District Manager name: Barbara Wolff (203) 740-2283
FCM name: Sandra Wok Schimizzi, MED,LPC,CRC,CCM      724-733-1105
Rehabilitation Counselor and Field Case Manager
_____
Date of Survey Report: Date of Survey Report:  April 16, 2007
A LABOR MARKET SURVEY has been requested by Vince Engel of CIGNA
DISABILITY MANAGEMENT SOLUTIONS regarding Andy Chan.

TARGET OCCUPATIONS/JOBS:
CodeOccupationIndustrySVP      Strenght
239.362-014Customer Service Representative5S
379.362-014Protective-Signal Operator Any Industry5S
221.367-070Service ClerkClerical and Kindred4S
249.362-026Order ClerkClerical and Kindred4S
205.367-042Registration ClerkGovernment Services3S
211.462-026Check CashierBusiness Services3S
299.357-014Telephone SolicitorAny Industry3S
PHYSICAL CAPACITY LEVEL SOUGHT: Claimant is functioning in the
sedentary level of physical demand, can sit and reach frequently, and
can use his upper extremities on a continuous basis for fine
manipulation, simple and firm grasping.

POTENTIAL EMPLOYMENT OPPORTUNITIES (within specific geographic
radius): within 50 miles of Newark, CA 94560.

Resources used for completion of the Labor Market Survey: DOT, O*Net,
Careerbuilder, MonsterJobs, Chamber of Commerce, local newspapers, the
claimants self reported education of a High School Diploma and work
history, and the limitations and restrictions completed by Dr.
Hammerman on 3/22/07.
The following jobs were identified:
1.  Job Title:  Telemarketer
Employer: Cornerstone Funding
Address: Santa Cruz, CA
Phone: 888-965-5700
Contact: Alicia , Secretary
Qualifications/Duties: Complete cold calling to businesses offering

LINA 0038

# Intracorp

cash advances.
Physical Demand Level:  sedentary
Wages/Hours: full time,  $10.00 base
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of
force occasionally and/or a negligible amount of force frequently to
lift, carry, push, and pull or otherwise move objects. Sedentary work
involves sitting most of the time, but may involve walking or standing
for brief periods of time. Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: yes
2. Job Title: dispatcher
Employer: First Alarm
Address: 1111 Estates Dr, Aptos CA
Phone: 831-476-1111
Contact:  Ken, Dispatching
Qualifications/Duties: Individual is responsible for dispatching
patrol and security to residential and commercial buildings responding
to alarms.

Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of
force occasionally and/or a negligible amount of force frequently to
lift, carry, push, and pull or otherwise move objects. Sedentary work
involves sitting most of the time, but may involve walking or standing
for brief periods of time. Wages/Hours: full time $10/hr
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: yes
3. Job Title:  customer service
Employer: Jenny Craig
Address: Dublin, Ca
Phone: 925-828-1798
Contact:  Gina, Jenny Craig Consultant
Qualifications/Duties:  answer phone calls, schedule weekly
appointments, process client weekly orders, communicate with warehouse
to ensure orders are fulfilled properly, High School diploma with good
customer service and communication skills to work over the phone with
clients.

Physical Demand Level:  S-Sedentary Work. Exerting up to 10 pounds of
force occasionally and/or a negligible amount of force frequently to
lift, carry, push, pull or otherwise move objects. Sedentary work
involves sitting most of the time, but may involve walking or standing
for brief periods of time. Wages/Hours: full time, 9-10/hr
Is there a current job open?:  yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: Yes
4. Job Title:  customer service
Employer: Crothall
Address: Mountain View, Ca
Phone:  408-383-9016
Contact:  Peggy, HR
Qualifications/Duties:  maintain proper arrangement and function of
Shred-It  Stations, plants and furniture in building lobbies, post and



maintain up to date conference room schedules, ensure new hire work
stations, high school diploma required and one year of customer
service. Physical Demand Level: M-Medium Work.
Wages/Hours: full time,  $15. to $22. per hour
Is there a current job open?:  yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: No
5. Job Title:  Customer Service Rep
Employer: Western Exterminator Company
Address:  Burlingame, Ca
Phone:  650-579-1118 (fax) 1800/937-8398
Contact:  Madonna Oplatka
Qualifications/Duties:  use phones, data entry, customer service, good
communication skills  Physical Demand Level:  S-Sedentary Work.
Exerting up to 10 pounds of force occasionally and/or a negligible
amount of force frequently to lift, carry, push, and pull or otherwise
move objects. Sedentary work involves sitting most of the time, but
may involve walking or standing for brief periods of time.
Wages/Hours: full time,  10-15/hr
Is there a current job open?:  yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: yes
6. Job Title:  Customer Service-Concierge
Employer: BMW of  San Francisco
Address: San Francisco, Ca
Phone:  415-863-9000
Contact: Layla, HR
Qualifications/Duties: provide front line support to customers by
greeting, welcoming and directing them while delivering excellent
customer service, good phone skills, verbal and written communication.

Physical Demand Level:  S-Sedentary Work. Exerting up to 10 pounds of
force occasionally and/or a negligible amount of force frequently to
lift, carry, push, and pull or otherwise move objects. Sedentary work
involves sitting most of the time, but may involve walking or standing
for brief periods of time. Wages/Hours: full time,  $12. to $15. per
hour
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: yes
7. Job Title:  Customer Service
Employer: Custom Coffee Plan
Address: San Leandro, Ca
Phone:  510-483-1133
Contact: Michael Alexander , manager
Qualifications/Duties:  provide customer service to customers, sales
reps. and technicians, process sales paperwork, contact new customers,
data entry, tracking inventory, AR inquiries and provide timely follow
up to customers
Physical Demand Level:  S-Sedentary Work. Exerting up to 10 pounds of
force occasionally and/or a negligible amount of force frequently to
lift, carry, push, and pull or otherwise move objects. Sedentary work
involves sitting most of the time, but may involve walking or standing

 **Intracorp**

for brief periods of time. Wages/Hours: full time, would not provide
 Is there a current job open?:  yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: yes
8. Job Title:  Cashier
Employer: Mercedes Benz of San Francisco
Address: San Francisco, Ca
Phone:  415-673-1700
Contact:  Sandra Hom
Qualifications/Duties:  customer service, data entry, input data and
maintains and creates customer satisfaction.
Physical Demand Level:  S-Sedentary Work. Exerting up to 10 pounds of
force occasionally and/or a negligible amount of force frequently to
lift, carry, push, and pull or otherwise move objects. Sedentary work
involves sitting most of the time, but may involve walking or standing
for brief periods of time. Wages/Hours: full time, Would not provide

Is there a current job open?:  yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: yes
9. Job Title:  Customer Care Rep
Employer: Dynamic Staffing
Address: Pleasanton, CA
Phone: 925/847-4000
Contact: Amanda Hawkins
Qualifications/Duties:  Assist customers via phone and email in all
aspects of account management/status, calling warm company provided
leads, research and resolve problems and learn how to pre qualify
customers for a variety of loans offered by the company Physical
Demand Level:  S-Sedentary Work. Exerting up to 10 pounds of force
occasionally and/or a negligible amount of force frequently to lift,
carry, push, and pull or otherwise move objects. Sedentary work
involves sitting most of the time, but may involve walking or standing
for brief periods of time. Wages/Hours: full time,  $16-17/hr
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history,
educational history, and physical limitations?: yes
10. Job Title: Call Center Rep
Employer:Alkar Human Resources
Address: Fairfield, CA
Phone:  707/421-0110
Contact: Stacey Parker, Staffing Coordinator
Qualifications/Duties:  Providing answers to consumers inquiries,
education consumers on products, benefits, and ensuring all incoming
calls are handled in a professional manner. Promote continual process
of improving product knowledge.
Physical Demand Level:  S-Sedentary Work. Exerting up to 10 pounds of
force occasionally and/or a negligible amount of force frequently to
lift, carry, push, and pull or otherwise move objects. Sedentary work
involves sitting most of the time, but may involve walking or standing
for brief periods of time. Wages/Hours: full time,  9-10/hr
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history,

 Intracorp

educational history, and physical limitations?: yes
CONCLUSION
A LABOR MARKET SURVEY was requested to identify jobs that exist and
were currently open in Andy Chan's labor market that are within the
claimant's work history, educational history, and physical
limitations.

Of the 10 employers listed above, 9 employers indicated that the job
openings listed above met the requirements as stated.

Employers listed as 7 an 8 did not have current openings.
Salary ranges for the positions that had openings in the listed
ranged from $9.00 to $17. 00 per hour.

Sincerely,
Sandra Wok Schimizzi, MED,LPC,CRC,CCM
Rehabilitation Counselor and Field Case Manager

5955 Central Ave.
Newark, CA 94560

April 25, 2006

PITTSBURGH

APR 3 0 2007

GROUP LIFE & DISABILITY
BENEFITS OFFICE

CIGNA Co.
P.O. Box 22325
Pittsburg, PA 15222-0325
Attn: Mr. Derek Brown

RE: Andy Chan, Acct.# 5008844, Policy # GL 0013814

Dear Mr. Brown,

I am writing you this letter to let you know that your process of updating my disability
claim have dragged too long. For the past 9 months, you have caused stress and anxiety
to me and to my wife, and it is still going on.

1) On June 5, 2006. You mailed questionnaires to update my personal and medical
records, which include personal information of my wife's social security #. We
completely complied.
2) You prematurely deleted my direct benefit deposit data, causing delays and lost
check.
3) When you received all my medical records from Kaiser Permanente, you were not
satisfied with Kaiser's records. So you requested an independent evaluation from
outside medical practitioner, Dr. Kenneth Hammerman of San Francisco. This is
very unusual for an ongoing claim, but I complied. I was suffering of gout pain
that day. My wife had to take half day off from work to drive me to San Francisco
from Fremont.
4) When I called you to follow up on a missing benefit check, you told me that Dr.
Kenneth Hammerman stated several good points that I should stay on disability.
However, you told me that you are going back to Kaiser (my primary HMO), for
what?

I hope you realized that for the past 9 months, all these medical reviews have caused
more stress and anxiety to my existing medical conditions, worsening my irregular
heartbeat. This has become a classic case of insurance harassment.

Sincerely yours,

Andy Chan

Cc: Shelley Mayhak

LINA 0043

5955 Central Ave.
Newark, CA 94560

April 25, 2006

CIGNA Co.
P.O. Box 22325
Pittsburg, PA 15222-0325
Attn: Mr. Derek Brown

PITTSBURGH

APR 3 0 2007

GROUP LIFE & DIS--BILITY
BENEFITS OFFICE

RE: Andy Chan, Acct.# 5008844, Policy # GL 0013814

Dear Mr. Brown,

I am writing you this letter to let you know that your process of updating my disability
claim have dragged too long. For the past 9 months, you have caused stress and anxiety
to me and to my wife, and it is still going on.

  1) On June 5, 2006. You mailed questionnaires to update my personal and medical
     records, which include personal information of my wife's social security #. We
     completely complied.
  2) You prematurely deleted my direct benefit deposit data, causing delays and lost
     check.
  3) When you received all my medical records from Kaiser Permanente, you were not
     satisfied with Kaiser's records. So you requested an independent evaluation from
     outside medical practitioner, Dr. Kenneth Hammerman of San Francisco. This is
     very unusual for an ongoing claim, but I complied. I was suffering of gout pain
     that day. My wife had to take half day off from work to drive me to San Francisco
     from Fremont.
  4) When I called you to follow up on a missing benefit check, you told me that Dr.
     Kenneth Hammerman stated several good points that I should stay on disability.
     However, you told me that you are going back to Kaiser (my primary HMO), for
     what?

I hope you realized that for the past 9 months, all these medical reviews have caused
more stress and anxiety to my existing medical conditions, worsening my irregular
heartbeat. This has become a classic case of insurance harassment.

Sincerely yours,

Andy Chan

Cc: Shelley Mayhak

TRANS NO   01
TRANS TYPE I        EXP RECVD DT 03 29 2007        PROV NAME      MES

EXPENSE CD RX       EXP FROM DT  03 23 2007        EXP THRU DT   03 23 2007

CHARGE AMT   995.00   NOT COV AMT          RC     TOTAL PAYABLE   995.00

PROVIDER ID 2 382193020 000

PAYEE CODE  XX
NAME1 MEDICAL EVALUATION SPECIALISTS, INC./  N2 MES # 207020755
ADDR1 P.O. BOX 64520                         A2
CITY  DETROIT               ST/PROV MI   ZIP 48264 0520

DATE PAID   03 30 2007      CHECK NO 07341353
REV VOID                    STOP PAY IND

NEXT TASK:    FUNCTION:   KEYS : GL          0013814        000
              KEYS CONTINUED   : S554455382 0001 02 590 03302007 01

LINA 0045

TRANS NO   01
TRANS TYPE I          EXP RECVD DT 03 29 2007          PROV NAME      MES

EXPENSE CD RX         EXP FROM DT  03 22 2007          EXP THRU DT   03 22 2007

CHARGE AMT   995.00   NOT COV AMT            RC        TOTAL PAYABLE   995.00

PROVIDER ID 2 382193020 000

PAYEE CODE  XX
NAME1 /MES SOLUTIONS                    N2 299 MARKET STREET
ADDR1 SUITE 400                         A2
CITY  SADDLEBROOK          ST/PROV NJ   ZIP 07663

DATE PAID   03 29 2007     CHECK NO 07339107
REV VOID                   STOP PAY IND

NEXT TASK:   FUNCTION:   KEYS : GL              0013814        000
             KEYS CONTINUED   : S554455382 0001 02 590 03292007 01

LINA 0046

4/24/2007

# Disposition Form

Log Number: 55029      From: CHAN, ANDY

Check Number: 178262    Social Security Number:

To: BROWN, DEREK

Date Disbursement Form Due Back: 5/1/2007

**Return Reason Code**
**Circle One Only!!!!**

| | |
|---|---|
| 1 - Foreign Mail | 7 - Expense pymt. |
| 2 - Overpayment | 8 - Other |
| 3 - Incorrect Address | |
| 4 - Void on System | |
| 5 - Bank NSF | |
| 6 - Reimbursement | |

**LINA:**

✓ Refund has been processed and refund log completed.

_____ Check has been voided on SRO.

_____ Mail check to claimant (fully addressed envelope attached)***All correspondence and forms to be mailed with the check must be stapled to the disposition form.

_____ Other

_____

**CG**

_____ Refund has been processed and refund log completed.

_____ Check has been reversed. My opid is _____. Date accepted on SRO ___/___/___. Account # _____.

_____ Mail check to claimant (Fuly addressed envelope attached) *** All correspondence and forms to be mailed with the check must be stapled to the disposition form.

_____ Other

_____

_____ Original check received, the dummy check has not been received. Original check reversed. OPID _____.
Date accepted in SRO system ___/___/___. Account # _____.

_____ Original check received, the dummy check reversed previously.

_____ Dummy check received first and has been reversed. OPID _____.
Date accepted in SRO system ___/___/___. Account # _____.

_____ Original check ,dummy check received at the same time. Original check reversed. OPID _____.
Date accepted in system ___/___/___. Account # _____. Please return dummy check to document file.

_____ EBD "Life" reversal...completed form B114074 attached (Tracker)

_____ **Equicor/Steve Gordon**

**Equicor Disability: NOTE!!! Disposition form must be returned to the check coordinator on day of processing!!!**

_____ LTD refund processed on ___/___/___.

_____ LTD refund processed, off-line form attached. ***Refunds on overpayments that are pre-equiclaims***

_____ Other

**Corrections: NOTE!!! Disposition form must be returned to the check coordinator on the day of processing!!!**

_____ Correction needs to be made, check amount is $_____ , but was processed on the system for $_____.

_____ Correction made on ___/___/___.

**Note!!! The completed disposition form must be returned to the check coordinator on the day of processing!!!**

Signature: _____    Date Processed: 4/24/07

LINA 0047

REDACTED

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**INA LIFE INSURANCE COMPANY OF NEW YORK**
**SRO REFUND VOUCHER**

REFUND NO.

—

| POL PREFIX | POL NUMBER | POL SUFFIX | CERT ID AND NUMBER | CLAIMANT CODE |
|---|---|---|---|---|
| GL | 13814 | 000 | ▮▮▮▮▮▮▮▮ | 0001 |

| COV CODE | CLAIM NUMBER | CLAIM INCRD DATE | CAUSE OF LOSS CODE | RESERVE / NON-RESERVE |
|---|---|---|---|---|
| S 70 | | | | |

CERTHOLDER NAME:

CLAIMANT NAME:

| | TRANSACTION DATE | |
|---|---|---|
| Month | Day | Year |

| AMT. REFUNDED ON ABOVE CLAIM | AMT. OF REFUND | CHECK OR MONEY ORDER NUMBER |
|---|---|---|
| | | |

_____     _____     _____
Operator Name                              Operator ID                Claim Office Number

GF4651  Cat. #421024  Printed 3-89

SENDER'S COPY

LINA 0048

| LIFE INSURANCE COMPANY OF NORTH AMERICA | | DATE | CHECK NO | VENDOR KEY |
|---|---|---|---|---|
| INVOICE# | INV. DATE | 4/19/2007 | 178262 | LICNA |
| ANDY CHAN | 4/19/2007 | | DOC. AMT. | NET AMOUNT |
| | | | $995.00 | $995.00 |
| TOTALS | | | $995.00 | $995.00 |

:S

409553

WARNING DO NOT CASH UNLESS LOGO APPEARS IN BACKGROUND OF CHECK

**MEDICAL EVALUATION SPECIALISTS**
5700 E. 11 MILE ROAD
WARREN, MICHIGAN 48091-1229
(586) 558-7310

Comerica

9 9
720

NO. 178262

VOID AFTER 90 DAYS

| DATE | CHECK NO | AMOUNT |
|---|---|---|
| 4/19/2007 | 178262 | $995.00 |

Nine Hundred Ninety Five Dollars And 00 Cent:

LIFE INSURANCE COMPANY OF NORTH A
PO BOX 22328
PITTSBURGH PA 15222

DEREK BROWN

WARNING DO NOT CASH UNLESS ORIGINAL DOCUMENT APPEARS ON BACK OF CHECK

⑆178262⑆ ⑆072000096⑆ 1850237908⑈

MULTIPLE RECORD DISPLAY

```
PREFIX/NUMBER: SR (02) 07340754 AMT:          738.34    ISSUE DATE: 03/30/2007
SEGMENT ID   : 002 SMD CLAIMS & ACCTG AND LINA PENSION  ARCHIVE DT: 01/01/2003
BANK ACCT    : 0000015616                               RECON IND :


SEL  STATUS                     I/P/S/V DATE      AMOUNT      BLIP  BNK RETR CD
     STOP-PAYMENT STOPPED       04/19/2007        738.34
```

                    STOP PAYMENT HAS BEEN ACCEPTED
```
PF1=MENU      PF2=ARCHIVE REQUEST     PF3=STOP  PF4=VOID  PF7=BACK    PF8=FORWARD
```

LINA 0050



3/8/2007


ANDY CHAN                                          Claim Number:
5955 CENTRAL AVE
Newark, CA  94560


Dear ANDY CHAN,

Your disability insurance administrator has requested that you be scheduled for an Independent Medical Evaluation. The purpose of this evaluation is for them to obtain a better understanding of your condition and to clarify your current capabilities.

The information you will need for your appointment is as follows:


| | |
|---|---|
| Appointment Date & Time: | 3/22/2007 at 3:45 PM |
| Physicians Name: | KENNETH J. HAMMERMAN    (Specialty: Gastroenterology) |
| Address: | 2100 WEBSTER STREET, SUITE 423 |
| City, State & Zip Code: | SAN FRANCISCO CA  94115 |

You MUST bring a photo ID with you to this appointment.

Please call us to confirm your appointment upon receipt of this letter at (800) 869-7710. As the results of this exam are critical to the continuing evaluation of your disability claim, it is imperative that you attend. If for some reason you need to reschedule the date or time, please contact your disability insurance administrator or MES Solutions immediately.

Should you need directions to the physician's office, please call (800) 869-7710.

You will not be charged for this examination. When you arrive for your appointment, do not provide any of your personal insurance information. Billing arrangements have already been made with the doctor's office.

Please bring all available records including any MRI, X-Rays or CAT scans to the appointment. The doctor will need these records in order to make a complete evaluation of your condition.


Sincerely,
MES Solutions
Ph:(800) 869-7710

## Transferable Skills Analysis

Name: Andy Chan
Claim Number: ▄▄▄▄▄▄    REDACTED    Date: April 4, 2007

A Transferable Skills Analysis was performed on this claimant using the claimant's self reported education of a High School Diploma and work history, and the limitations and restrictions completed by Dr. Hammerman on 3/22/07. Claimant is functioning in the sedentary level of physical demand, can sit and reach frequently, and can use his upper extremities on a continuous basis for fine manipulation, simple and firm grasping.

The following work history was used to perform the TSA:

| DOT Code | Occupation Title | SVP | Yrs | Str |
|---|---|---|---|---|
| 823.261-030 | Data Communications | 7 | 1978-1994 | M |

As a result of the TSA, the following occupations were among those identified as transferable for Mr. Chan:

| Code | Occupation | Industry | SVP | Str |
|---|---|---|---|---|
| 239.362-014 | Customer Service Representative | Radio and TV Broadcasting | 5 | S |
| 379.362-014 | Protective-Signal Operator | Any Industry | 5 | S |
| 221.367-070 | Service Clerk | Clerical and Kindred | 4 | S |
| 249.362-026 | Order Clerk | Clerical and Kindred | 4 | S |
| 205.367-042 | Registration Clerk | Government Services | 3 | S |
| 211.462-026 | Check Cashier | Business Services | 3 | S |
| 299.357-014 | Telephone Solicitor | Any Industry | 3 | S |

Vince Engel, M.Ed., CRC, LPC
Rehabilitation Specialist

LABOR MARKET SURVEY

To: CIGNA DISABILITY MANAGEMENT SOLUTIONS
    1600 W Carson
    Ste 300
    Pittsburgh, PA 152193419
    (800) 238-2125
Attention: Vince Engel
Re:  Andy Chan
Date of injury: 02/22/2006        Intracorp file number: DFKRPW11-0001

District Manager name: Barbara Wolff (203) 740-2283
FCM name: Sandra Wok Schimzzi, MED,LPC,CRC,CCM    724-733-1105
Rehabilitation Counselor and Field Case Manager

Date of Survey Report: Date of Survey Report:  April 16, 2007

A LABOR MARKET SURVEY has been requested by Vince Engel of CIGNA DISABILITY MANAGEMENT
SOLUTIONS regarding Andy Chan.

TARGET OCCUPATIONS/JOBS:

| Code | Occupation | Industry | SVP | Strenght |
|------|-----------|----------|-----|----------|
| 239.362-014 | Customer Service Representative | | 5 | S |
| 379.362-014 | Protective-Signal Operator | Any Industry | 5 | S |
| 221.367-070 | Service Clerk | Clerical and Kindred | 4 | S |
| 249.362-026 | Order Clerk | Clerical and Kindred | 4 | S |
| 205.367-042 | Registration Clerk | Government Services | 3 | S |
| 211.462-026 | Check Cashier | Business Services | 3 | S |
| 299.357-014 | Telephone Solicitor | Any Industry | 3 | S |

PHYSICAL CAPACITY LEVEL SOUGHT: Claimant is functioning in the sedentary level of physical demand, can sit
and reach frequently, and can use his upper extremities on a continuous basis for fine manipulation, simple and firm
grasping.

POTENTIAL EMPLOYMENT OPPORTUNITIES (within specific geographic radius): within 50 miles of Newark,
CA 94560.

Resources used for completion of the Labor Market Survey: DOT, O*Net, Careerbuilder, MonsterJobs, Chamber of
Commerce, local newspapers, the claimant's self reported education of a High School Diploma and work history, and
the limitations and restrictions completed by Dr. Hammerman on 3/22/07.

The following jobs were identified:

1. Job Title: Telemarketer
Employer: Cornerstone Funding
Address: Santa Cruz, CA
Phone: 888-965-5700
Contact: Alicia , Secretary
Qualifications/Duties: Complete cold calling to businesses offering cash advances
Physical Demand Level: sedentary
Wages/Hours: full time, $10.00 base
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount
of force frequently to lift, carry, push, and pull or otherwise move objects. Sedentary work involves sitting most of the
time, but may involve walking or standing for brief periods of time.
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: yes

2. Job Title: dispatcher
Employer: First Alarm

1

LINA 0053

Address: 1111 Estates Dr, Aptos CA
Phone: 831-476-1111
Contact: Ken, Dispatching
Qualifications/Duties: Individual is responsible for dispatching patrol and security to residential and commercial buildings responding to alarms.
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, and pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
Wages/Hours: full time $10/hr
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: yes

3. Job Title: customer service
Employer: Jenny Craig
Address: Dublin, Ca
Phone: 925-828-1798
Contact: Gina, Jenny Craig Consultant
Qualifications/Duties: answer phone calls, schedule weekly appointments, process client weekly orders, communicate with warehouse to ensure orders are fulfilled properly. High School diploma with good customer service and communication skills to work over the phone with clients.
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
Wages/Hours: full time, 9-10/hr
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: Yes

4. Job Title: customer service
Employer: Crothall
Address: Mountain View, Ca
Phone: 408-383-9016
Contact: Peggy, HR
Qualifications/Duties: maintain proper arrangement and function of Shred-It Stations, plants and furniture in building lobbies, post and maintain up to date conference room schedules, ensure new hire work stations, high school diploma required and one year of customer service.
Physical Demand Level: M-Medium Work.
Wages/Hours: full time, $15. to $22. per hour
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: No

5. Job Title: Customer Service Rep
Employer: Western Exterminator Company
Address: Burlingame, Ca
Phone: 650-579-1118 (fax) 1800/937-8398
Contact: Madonna Oplatka
Qualifications/Duties: use phones, data entry, customer service, good communication skills
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, and pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
Wages/Hours: full time, 10-15/hr
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: yes

6. Job Title: Customer Service-Concierge
Employer: BMW of San Francisco
Address: San Francisco, Ca
Phone: 415-863-9000
Contact: Layla, HR
Qualifications/Duties: provide front line support to customers by greeting, welcoming and directing them while delivering excellent customer service, good phone skills, verbal and written communication.

2

Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, and pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
Wages/Hours: full time, $12. to $15. per hour
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: yes

7. Job Title: Customer Service
Employer: Custom Coffee Plan
Address: San Leandro, Ca
Phone: 510-483-1133
Contact: Michael Alexander , manager
Qualifications/Duties: provide customer service to customers, sales reps. and technicians, process sales paperwork, contact new customers, data entry, tracking inventory, AR inquiries and provide timely follow up to customers
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, and pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
Wages/Hours: full time, would not provide
 Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: yes

8. Job Title: Cashier
Employer: Mercedes Benz of San Francisco
Address: San Francisco, Ca
Phone: 415-673-1700
Contact: Sandra Horn
Qualifications/Duties: customer service, data entry, input data and maintains and creates customer satisfaction.
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, and pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
Wages/Hours: full time, Would not provide
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: yes

9. Job Title: Customer Care Rep
Employer: Dynamic Staffing
Address: Pleasanton, CA
Phone: 925/847-4000
Contact: Amanda Hawkins
Qualifications/Duties: Assist customers via phone and email in all aspects of account management/status, calling warm company provided leads, research and resolve problems and learn how to pre qualify customers for a variety of loans offered by the company
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, and pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
Wages/Hours: full time, $16-17/hr
Is there a current job open?: yes
Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: yes

10. Job Title: Call Center Rep
Employer: Alkar Human Resources
Address: Fairfield, CA
Phone: 707/421-0110
Contact: Stacey Parker, Staffing Coordinator
Qualifications/Duties: Providing answers to consumer's inquiries, education consumers on products, benefits, and ensuring all incoming calls are handled in a professional manner. Promote continual process of improving product knowledge.
Physical Demand Level: S-Sedentary Work. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, and pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
Wages/Hours: full time, 9-10/hr
Is there a current job open?: yes

3

Is Andy Chan competitive job candidate based upon work history, educational history, and physical limitations?: yes

CONCLUSION

A LABOR MARKET SURVEY was requested to identify jobs that exist and were currently open in Andy Chan's labor market that are within the claimant's work history, educational history, and physical limitations.

Of the 10 employers listed above, 9 employers indicated that the job openings listed above met the requirements as stated.

Employers listed as 7 an 8 did not have current openings.

Salary ranges for the positions that had openings in the listed ranged from $9.00 to $17.00 per hour.

Sincerely,

Sandra Wok Schimizzi, MED,LPC,CRC,CCM
Rehabilitation Counselor and Field Case Manager

4

LINA 0056


CIGNA

# Transferable Skills Analysis Referral Form
# Labor Market Survey Referral Form

| | |
|---|---|
| Claimant Name: Andy Chan | Date of Referral:          4/2/2007 |
| Policyholder: Fujitsu Business Communications | Policy #: GL-13814 |
| Case Manager: Derek Brown | RUSH/TL Signature: |

List Primary Diagnosis: Renal Failure

Indexing required according to policy? [ ]

Earnings threshold for this referral: [ ]
(based on contract and/or procedure)

Index Earnings as of this date: [ ]

Initial Covered Earnings (BME) AS OF: **5/6/1995**  =
**Benefit Start Date**

0.00%
$0.00

*Indexing not necessary at this time.*

**Wage Requirement for this referral**  =  $          -

1    Why are you referring this file for a TSA? [WOP]

Any Occ Date: [ 5/6/1995 ]

2 LMS will be conducted if necessary.          Please provide:
City: [ ]
State: [ ]
Zip: [ ]

3 For work history information, TAB the following documents in the file for use in performing TSA:

| Document | Tabbed in File? |
|---|---|
| 1 DQ | yes |
| 2 Job Description | no |
| 3 Resume/Job Application | -- |
| *(From ER if possible)* | |

4 For Limitations and Restrictions, please TAB the following items in the file:

| Document | Tabbed in File? |
|---|---|
| Current Medical (< 6 mos. old) | yes |

examples: *PAA, Psych Abilities Form, IME, FCE, AMD/NCM Documentation of L's / R's*

5 State any other pertinent information or other specific issues which need to be addressed by the TSA.

**PLEASE EXPEDITE THIS CLAIM**     Please run TSA and LMS if nec. No job description on file, but DQ there and Job listed on claim form.

Select Office Location: [ Pittsburgh ]

Return this form and the file to :  **Vince Engel, M.Ed., CRC**
**Rehabilitation Specialist**
**Extension 3113**

*Form Updated 3/22/2005*

LINA 0057

TRANS NO    01
TRANS TYPE I            EXP RECVD DT 03 29 2007       PROV NAME    MES

EXPENSE CD RX           EXP FROM DT  03 23 2007       EXP THRU DT   03 23 2007

CHARGE AMT   995.00   NOT COV AMT             RC      TOTAL PAYABLE   995.00

PROVIDER ID 2 382193020 000

PAYEE CODE  XX
NAME1 MEDICAL EVALUATION SPECIALISTS, INC./  N2 MES # 207020755
ADDR1 P.O. BOX 64520                         A2
CITY  DETROIT               ST/PROV MI    ZIP 48264 0520

DATE PAID   03 30 2007          CHECK NO


NEXT TASK:    FUNCTION:   KEYS : GL            0013814       000
              KEYS CONTINUED   : S554455382 0001 02 590
V989-EXPENSE TRANSACTION COMPLETED

LINA 0058

# MES
## SOLUTIONS
### SINCE 1978

299 MARKET STREET
SUITE 400
SADDLEBROOK NJ 07663

Phone: (800) 869-7710
Fax:     (201) 221-0005

---

**MES Number:**     207020755

**Date of Invoice:**     03/23/2007

**Insurance Carrier:**     CIGNA/PITTSBURGH, DISABILITY
1600 GATEWAY VIEW PLAZA
SUITE 300, W. CARSON STREET
PITTSBURGH, PA  15219

**Attention:**   JEAN KOZIK-KULIS

**Examinee Information:**   CHAN, ANDY .
5955 CENTRAL AVE
Newark, CA  94560

RECEIVED

Pgh-Claims

**Claim Number:**

**Policy Number:**

**Insured:**

**DOI:**     11/04/1995

**Appt. Scheduled With:**   KENNETH HAMMERMAN*
Gastroenterology

| Date of Service | Description of Services | Amount |
|---|---|---|
| 3/22/07 | Long Term Disability Examination & Report | 995.00 |
| | Cash Received | 0.00 |
| | **Total:** | **$995.00** |

Paid
3/30/07

**Remit to:**

Medical Evaluation Specialists, Inc
PO BOX 64520
DETROIT MI  48264-0520
(800) 869-7710

TAX ID #: 38-2193020

Thank you for your referral

Kenneth J. Hammerman, M.D.
Gastroenterology
2100 Webster Street
Suite 423
San Francisco, CA 94115

March 23, 2007

Cigna
1600 Gateway View Plaza, Suite 300
W. Carson Street
Pittsburgh, Pennsylvania 15219

Attention:  Ms. Jean Kozik-Kulis
            NCM

RE:  Mr. Andy Chan
     File #207020755
     Date of Incident:  November 4, 1995

Dear Ms. Kozik-Kulis:

At your request, Mr. Andy Chan was seen for an independent medical evaluation on March 22, 2007.

Prior to evaluation, it was explained to the examinee that this appointment was for purposes of evaluation only – not for care, treatment or consultation – and therefore, no doctor-patient relationship would result.  The examinee has also been advised that I am an independent doctor and have been requested to conduct this evaluation by the individual noted above.

HISTORY

Mr. Chan is a 57-year-old male disabled since 1994.  The patient has an extremely complex medical history with numerous medical problems consisting of the following:

1.   Renal failure secondary to polycystic kidney disease.  He developed progressive renal failure and was placed on dialysis in 1994.  In 1998 he had a renal transplant and has done generally well since. He remains on immunosuppressive therapy with prednisone 5 mg and Prograf .5 bid.  In December his BUN was 34 and his creatinine was 0.9.  He had some ongoing problems

LINA 0060

Page 2

RE: Mr. Andy Chan
File #CHAN207020755

> with edema.  He has not had any events related to
> immunocompromise.

2.  In 2002, he developed diabetes.  He currently is on insulin NPH
    12 units in the morning.  He does fractional blood sugars and
    takes additional regular insulin based on blood sugars.  In
    addition, he takes Glyburide 2.5 mg bid.  Other than possible
    cataracts, there has been no known diabetic eye complication.
    No neuropathy.  His last hemoglobin in December 2006, was 6.2%.

3.  Gout.  He has had multiple episodes of acute gout involving toe,
    knee, heel, and elbow.  He takes colchicin on a daily basis.
    Currently he is experiencing acute gouty flare on his right
    elbow and has been advised to increase his Prednisone to 80 mg
    per day.

4.  Chronic hepatitis B.  He was diagnosed with hepatitis B prior to
    his transplant.  He had a liver biopsy in 1992 and another
    biopsy in 1998.  He was initially placed on lamivudine and
    developed resistance to lamivudine and was changed to Hepsera
    and had been on Hepsera since his hepatitis B.  Viral DNA was
    undetectable in December and in December his AST was 15 and ALT
    was 14.

5.  Atrial fibrillation.  He has atrial fibrillation.  He is on
    Sotalol for rate control.  He was on Coumadin but apparently
    after trying for several months his pro time could not be
    stabilized.  Coumadin was discontinued and he is now on aspirin
    alone.  He does have chronic edema, which varies.  He has no
    complaints of chest pain.

6.  Hypertension.  He is hypertensive.  He currently takes
    Lisinopril 40 mg bid and Norvasc 5 mg daily.

7.  Duodenal carcinoid.  He underwent an endoscopy for dyspepsia in
    approximately 2004 and was felt to have a carcinoid in his
    duodenum.  This was followed periodically with endoscopy and he
    had an endoscopic ultrasound and in November 2006 had mucosal
    resection.  His last endoscopy in December showed a small polyp
    lesion of the duodenum, which was biopsied.  No carcinoid tumor
    was identified on the pathology.  He has never had symptoms of
    carcinoid syndrome such as flushing or diarrhea.  His plan is to
    have another endoscopy soon.  He has no complaints of nausea,
    vomiting and swallows without difficulty.  No problems with

LINA 0061

Page 3

RE: Mr. Andy Chan
File #CHAN207020755

bowels other than some occasional constipation.  No abdominal
pain and no bleeding.  His medical history is otherwise
remarkable for pneumonia.  No other surgeries, no injuries and
no allergies.  Current medications are as noted above.

## SOCIAL AND PERSONAL HISTORY

He is married.

He formerly worked as a computer equipment installer for Fujitsu.  He
held this position from 1978 to 1994.  He has been on disability
since 1994.

He does not smoke.  He drinks alcohol rarely.

He is active in his church, reads and does some minimal work around
the house helping his wife who still works.  He does some shopping,
cooking and light cleaning.

## FAMILY HISTORY

Non-contributory.

## REVIEW OF SYSTEMS

Weight is stable.  No chills, fevers.

## Central Nervous System

He recently developed some headaches.  As noted above his cataract
extraction will be pending in the not so distant future.  No focal
neurologic episodes.  No CVA.

## Respiratory

Some dyspnea on exertion.  No chest pain.

## Cardiac

See present illness.

## GI

See present illness.

LINA 0062

Page 4

RE:  Mr. Andy Chan
File #CHAN207020755

<u>GU</u>

See present illness.

<u>Musculoskeletal</u>

See present illness.

<u>Skin</u>

Negative.

<u>PHYSICAL EXAMINATION</u>

On physical exam, his blood pressure was 150/96.  Heart rate was
irregular at 90 to 100.  He was afebrile.  Respirations 20.  Head was
unremarkable.  Eyes: conjunctiva and sclera clear.  Fundi: Not well
seen due to bilateral cataracts.  Ears: Canals and tympanic
membranes clear.  Oral cavity was negative.  Neck was supple and no
jugular venous distention.  Carotids are 2+.  Trachea midline.
Thyroid is not palpable.  No lymphadenopathy.  Chest was clear.
Cardiac exam unremarkable, except for rate and rhythm.  Abdomen was
soft and non-tender.  I could not feel the liver or spleen.  There
was a well-healed surgical scar in the lower abdomen and palpable
renal explant in the right lower quadrant.  There was no bruit over
the kidney.  Extremities showed intact peripheral pulses.  There was
1+ edema with mild stasis change.  The skin showed no rashes.  Major
joints:  Right elbow was tender, red, inflamed consistent with acute
gout.  The skin showed no focal lesions.  Neurologic:  Cranial nerve
function and motor function, deep tendon reflexes intact.

<u>DIAGNOSTIC STUDIES</u>

No diagnostic studies were requested.

<u>DIAGNOSES</u>

1.  Polycystic Kidney Disease, Status Post Renal Transplant in 1998.

2.  Diabetes Mellitus, insulin dependent.

3.  Recurrent Acute Gout.

LINA 0063

Page 5

RE:  Mr. Andy Chan
File #CHAN207020755

4.    Chronic Hepatitis B.

5.    Chronic Atrial Fibrillation.

6.    Hypertension.

7.    Status Post Resection of Duodenal Carcinoid.

REVIEW OF RECORDS

Medical records reviewed include records from Kaiser Hospital in
Fremont. Laboratory data was as quoted above and diagnoses and
medications are as noted above.  As noted above, data from Kaiser
records was consistent with that reported by Mr. Chan.

OPINION

Mr. Chan has multiple medical problems.  On exam he did demonstrate
generalized weakness. He walked slowly.  He was minimally dyspneic on
walking.  He was able to sit without difficulty.  He was alert and
oriented and quite cooperative through the interview and exam
process.
Mr. Chan is mildly Cushingoid on exam secondary to his chronic
steroid use and does have some evidence of some mild muscle atrophy.

In my opinion, because of his multiple medical problems and multiple
medications, I would consider Mr. Chan physically impaired. He does
exhibit significant generalized weakness, lack of stamina, and
dyspnea on exam. Please review the enclosed Physical Ability
Assessment form for any restrictions and/or limitations.

Thank you for allowing me to evaluate Mr. Andy Chan.  If you have
further questions, please do not hesitate to contact me.

I declare that the information contained within this document was
prepared and is the work product of the undersigned, and is true to
the best of my knowledge and information.

LINA 0064

Page 6

RE:  Mr. Andy Chan
File #CHAN207020755

Sincerely,

Kenneth J. Hammerman, M.D.

Dictated, reviewed, and opinion verified.

KJH/et

# *Physical Ability Assessment Form*



CIGNA Group Insurance
Life ● Accident ● Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

We are evaluating your patient's disability claim in order to determine functional impairment. Please check the boxes corresponding to the patient's level of physical functioning.    Please substantiate your findings with medical documentation. (Failure to provide the requested reports / data may result in delay in claim determinations).

Patient Name ___Andy Chen___    Date of Birth ___████ '49___  REDACTED

Diagnosis(es)/ICD-9 Code _____

*Throughout* an 8-hour workday, the patient can tolerate, *with positional changes and meal breaks,* the following activities for the specific durations:

| | Not applicable to diagnosis(es) | Continuously (67 - 100%) (5.5 + hrs) | Frequently (34 - 66%) (2.5 - 5.5 hrs) | Occasionally (1 - 33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| **Sitting:** | | | ✓ | | |
| **Standing:** | | | | ✓ | |
| **Walking:** | | | | ✓ | |
| **Reaching:** Overhead | | | ✓ | | |
| Desk Level | | | ✓ | | |
| Below Waist | | | ✓ | | |
| **Fine Manipulation:** Right: | | ✓ | | | |
| Left: | | ✓ | | | |
| **Simple Grasp:** Right: | | ✓ | | | |
| Left: | | ✓ | | | |
| **Firm Grasp:** Right: | | | ✓ | | |
| Left: | | | ✓ | | |
| **Lifting:** 10 lbs. | | | | ✓ | |
| 11 - 20 lbs. | | | | | |
| 21 - 50 lbs. | | | | | |
| 51 - 100 lbs. | | | | | |
| 100+ lbs. | | | | | |
| **Carrying:** 10 lbs. | | | | ✓ | |
| 11 - 20 lbs. | | | | | |
| 21 - 50 lbs. | | | | | |
| 51 - 100 lbs. | | | | | |
| 100+ lbs. | | | | | |

|  | Not applicable to diagnosis(es) | Continuously (67 - 100%) (5.5 + hrs) | Frequently (34 - 66%) (2.5 - 5.5 hrs) | Occasionally (1 - 33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| Pushing          (Max. Wt.: 10 ) |  |  |  | ✓ |  |
| Pulling:          (Max. Wt.: 10 ) |  |  |  | ✓ |  |
| Climbing:     Regular Stairs |  |  |  | ✓ |  |
|                    Regular Ladders |  |  |  |  |  |
| Balancing: |  |  |  | — |  |
| Stooping: |  |  |  | — |  |
| Kneeling: |  |  |  | — |  |
| Crouching: |  |  |  | — |  |
| Crawling: |  |  |  | — |  |
| Seeing: |  | ✓ |  |  |  |
| Hearing: |  | ✓ |  |  |  |
| Smell/Taste: |  | ✓ |  |  |  |
| Enviromental Conditions: Exposure to extremes in heat |  |  |  |  |  |
| Exposure to extremes in cold |  |  |  |  |  |
| Exposure to wet / humid conditions |  |  |  |  |  |
| Exposure to vibration |  |  |  |  |  |
| Exposure to odors / fumes / particles |  |  |  |  |  |
| Can work around machinery |  |  |  |  |  |
| Ability to work extended shifts / overtime: |  |  |  |  |  |
| Use lower extremities for foot controls |  |  |  | ✓ |  |

*Please use this space to elaborate on ANY of the above categories:*

Name:  KENNETH J. HAMMERMAN*            Signature: _____

Medical Specialty: Gastroenterology       Date: 3/22/07

Address: 2100 Webster St #423         Phone: 415 - 923 3/22

Feaderal ID Tax Number: 94~~~~~   94 - 120 6576

## Please include any objective test or narrative if available
## Thank you for your time.

Please return this form in the enclosed addressd envelope.

**Jean Kozik-Kulis, RN, BSN, CCM**
Nurse Case Manager
CIGNA Disability Management Solutions



**CIGNA** Group Insurance
Life · Accident · Disability

3/1/2007

Routing P250
PO Box 22326
Pittsburgh PA 15222-0326
Telephone 800-238-2125 x3384
Facsimile 412-402-3586

Claimant: Andy Chan
Date of Birth: ████949        REDACTED
Policy Number: GL13814
Policyholder Name: Fujitsu Business Communication
Underwriting Co.: Life Insurance Company of North America

Dear Doctor,

You have been asked to conduct an independent medical examination (IME) of Mr. Andy Chan to assess the patient's functional impairment as it relates to a non-occupational disability. This differs from a worker's compensation evaluation in that we do not need your assessment of maximum medical improvement, prognosis, or treatment recommendations.

You can help us make the appropriate disability claim decision by providing us with specific information about the patient's impairment, functional limitations, restrictions and abilities. Please provide a comprehensive report to include a detailed history obtained from the claimant (onset of condition, treatment to date, reported symptoms, the claimant's perception of how the symptoms impact their activities of daily living and job functions), a medical history summarizing the records reviewed, a complete physical examination (with detail in regard to objective findings, observations such as calluses on the hands, evidence of inconsistencies, non-organic findings, evidence of malingering, pain complaints that are out of proportion to the objective findings, and or evidence of symptom magnification), diagnosis(es) based on the current physical examination, and a final summary/conclusion. Also, please provide the following:

Please complete the enclosed Physical Abilities Assessment form, and return it with your typed narrative report (on your letterhead).

Brief File Summary: Mr. Chan is 58 yrs old and is status-post kidney transplant of 12/4/98 due to chronic renal failure precipitated by polycystic kidney disease. Co-morbids include hypertension and carinoid of the duodenal bulb. Mr. Chan treats with a gastroenterologist and a nephrologist. Medications include: omiprazole 20 mg daily, felodipine 2.5 mg daily, hepsera 10 mg daily, lisinopril 20 mg bid, sotalol 80 mg bid, colchicines 0.6mg daily, glyburide 5mg bid, prograf 0.5 mg bid, prednisone 5mg daily, novolin NPH 6-16 u bid, baby aspirin bid. Mr. Chan's nephrologist has indicated that Mr. Chan is incapable of sedentary activity.

Page 2

Please specifically address the following questions:

1.  Please list the diagnosis (es) based on the objective findings that you have noted on examination. If any of the diagnoses have resolved, please note that.

2.  Are the claimant's reported pain complaints and abilities supported by the objective findings on examination?

3.  Please complete the enclosed Physical Abilities Assessment.

4.  Please provide comments on the claimant's abilities to move during the exam: comment on the claimant's noted ability to get on and off of the exam table, walk, stand, open doors, etc. Did the claimant tolerate sitting on the exam table; require frequent repositioning while sitting on the exam table/chair? How long did the claimant sit on the exam table? In addition, please comment on any noted facial grimacing associated with these movements during the exam.

5.  Please comment on the attitude/cooperation that the claimant exhibited during the examination (answering questions, effort exerted when asked to perform, symptom magnification, etc.) and indicate if the claimant's reported pain complaints and abilities are supported by the objective findings.

"Learn more about medical management of Disability Claims" by visiting: www.cigna.com/group/toolkit/pdt/

Thank you,

Jean Kozik-Kulis, RN, BSN, CCM
Nurse Case Manager

## PHYSICAL ABILITY ASSESSMENT

We are evaluating your patient's disability claim in order to determine functional impairment Please check the boxes corresponding to the patient's level of physical functioning.  **Please substantiate your findings with medical documentation.   (Failure to provide the requested reports/data may result in delay in claim determinations).**

Patient Name_____ Date of Birth_____

Diagnosis(es)/ICD-9 Code_____

*Throughout* an 8-hour workday, the patient can tolerate, *with positional changes and meal breaks*, the following activities for the specified durations:

| | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| **Sitting:** | | | | | |
| **Standing:** | | | | | |
| **Walking:** | | | | | |
| **Reaching:**  Overhead | | | | | |
| Desk Level | | | | | |
| Below Waist | | | | | |
| **Fine Manipulation:**  Right: | | | | | |
| Left: | | | | | |
| **Simple Grasp:**  Right: | | | | | |
| Left: | | | | | |
| **Firm Grasp:**  Right: | | | | | |
| Left: | | | | | |
| **Lifting:**  10 lbs. | | | | | |
| 11-20 lbs. | | | | | |
| 21-50 lbs. | | | | | |
| 51-100 lbs. | | | | | |
| 100+ lbs. | | | | | |
| **Carrying:**  10 lbs. | | | | | |
| 11-20 lbs. | | | | | |
| 21-50 lbs. | | | | | |
| 51-100 lbs | | | | | |
| 100+ lbs. | | | | | |

LINA 0070

|  | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| **Pushing:** (Max. Wt.:_____) | | | | | |
| **Pulling:** (Max. Wt.:_____) | | | | | |
| **Climbing:** Regular Stairs | | | | | |
| Regular Ladders | | | | | |
| **Balancing:** | | | | | |
| **Stooping:** | | | | | |
| **Kneeling:** | | | | | |
| **Crouching:** | | | | | |
| **Crawling:** | | | | | |
| **Seeing:** | | | | | |
| **Hearing:** | | | | | |
| **Smell/Taste:** | | | | | |
| **Environmental Conditions:** | | | | | |
| Exposure to extremes in heat | | | | | |
| Exposure to extremes in cold | | | | | |
| Exposure to wet / humid conditions | | | | | |
| Exposure to vibration | | | | | |
| Exposure to odors / fumes / particles | | | | | |
| Can work around machinery | | | | | |
| **Ability to work extended shifts/ overtime:** | | | | | |
| **Use lower extremities for foot controls:** | | | | | |

*Please use this space to elaborate on ANY of the above categories:*

_____

_____

_____

_____

**Name:** _____  **Signature:** _____

Medical Specialty: _____  Date: _____

Address: _____  Phone: _____

Federal ID tax number: _____

**Please include any objective test or narrative if available.**
**Thank you for your time.**

**Please return this form in the enclosed addressed envelope.**

LINA 0071

# Claim Direction Staffing Form (Stand Alone Waiver)

### Please complete the sections that are applicable for the staffing purpose

## Claim Information:

| | | | |
|---|---|---|---|
| Staffing Date: | 02-20-2007 | Claim Manager: | Derek Brown  REDACTED |
| Cx Name: | Andy Chan | SSN: | ▓▓▓▓▓▓ |
| DOB/Age: | ▓▓▓1949  58 | Height/WT: | 5'7   176 |
| Employer | Fijitsu | Occupation: | Communication Tech |
| Incur Date: | 11-06-1994 | Date of Hire: | N/A |
| | | Employment term Date: | |
| BSD | 05-06-1995 | Claim Received Date: | 10-30-1995 |
| Prior Claim ? | | MI Max date: | N/A |
| Diagnosis/ICD 9 code: | 584   ESRD | | |
| Status: | II_____  Ongoing __X__   A/O _____   Appeal _____ | | |

Specific staffing questions that need to be addressed: Does the medical on file support the R&L's outlined on the APS submitted by Dr. Lisker.

Claim synopsis: APS states that cx has chronic renal failure, unc behave neo intestine, kidney transplant status and hypertension nos. Cx had kidney transplant in 12/1998. According to medical on file cx has been doing well. Cx travels back and forth from CA to NJ on what seems to be a regular basis. Cx also identifies lots of function on his DQ that would indicate that cx can do at least sedentary work.

## Vocational / Occupational History:

Occupational requirements
  Sedentary    Light X    Medium    Heavy    Very Heavy

| | | |
|---|---|---|
| Waiver __x__   TPD _____   ADB _____ | | Job Description or DOT on file:  Yes____ |
| Post-Mortem Waiver _____ | | |
| Training/Education/Experience | Dominant hand: R | VRC assigned: ____Yes ____ No |

## Medical / Offsets:

| Treating Physicians (name, specialty, initial & LOV, frequency): | | | | | | | |
|---|---|---|---|---|---|---|---|
| Provider | Specialty | Initial OV | LOV | TX | PAA? | R | L |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | |
|---|---|
| Projected RTW Date and Provider: | |
| CGT Guidelines: | |
| Other Benefits: | ☐ STD   ☐ WC   ☐ SSDI   ☐ SSR   ☐ Pension   ☐ Other |

1

LINA 0072

## Claim Direction Staffing Form (Stand Alone Waiver)

**Please complete the sections that are applicable for the staffing purpose**

*Comments/ Review outcome/Rationale/Plan:*

---

MD_____ NCM/BHS_____ VRC_____

recommendations: Medical does not support limitations of work as evidenced by. Cx has multiple conditions however, all have been addressed and treated appropriately. No current impairment + sedentary level activity is found c̄ office notes. Suggest alternate file resolution techniques.

---

**Future Claim Direction: May staff again if new medical becomes available. See above for actions required at this time**

| | | |
|---|---|---|
| F/U Medical _____ | SSDI _____ | |
| VOC Rehab _____ | W/C _____ | |
| SIU _____ | Other _____ | |

2

LINA 0073

## Claim Direction Staffing Form (Stand Alone Waiver)

**Please complete the sections that are applicable for the staffing purpose**

*Parties in Attendance:*

Please list printed staffing participant names with signatures:

1. JOAN KOZIR-KULIS, R.N. BSN CCM  *[signature]* BSN CCM
2.
3.
4.

Date: 4/18/07

3

LINA 0074

## REQUEST FOR VENDOR SERVICES: Physical

Claimant: __Andy Chan_____    SSN: __ ██████████ ~~REDACTED~~

Type of Service (circle one):    **IME**

Specialty Recommendation: _____Nephrologists_____

Requested By: __Derek Brown_____

Approved By: *Audley D Mayhew*  Date: ____02-20-2007_____

*Vendor Question Selection Sheet for* Physical *Conditions (circle the number):*

1. Please list the diagnosis (es) based on the objective findings that you have noted on examination. If any of the diagnoses have resolved, please note that.

2. Are the claimant's reported pain complaints and abilities supported by the objective findings on examination?

3. Please provide any recommendations in regard to assistive devices (headset, etc.) that may facilitate the claimant's return to the workforce.

4. Please provide standard recovery/return to work guidelines for the current diagnosis (es). If the claimant has exceeded the standard timeframes, are there objective findings that would support that? (Please document specific findings that you may reference to answer this question).

5. Please provide comments on the claimant's abilities to move during the exam: comment on the claimant's noted ability to get on and off of the exam table, walk, stand, open doors, etc. Did the claimant tolerate sitting on the exam table; require frequent repositioning while sitting on the exam table/chair? How long did the claimant sit on the exam table? In addition, please comment on any noted facial grimacing associated with these movements during the exam.

6. Please comment on the attitude/cooperation that the claimant exhibited during the examination (answering questions, effort exerted when asked to perform, symptom magnification, etc.).

7. Please comment on the claimant's ability to perform his own occupation and his abilities to perform any occupation. Please note the enclosed occupational description and complete the enclosed Physical Abilities Assessment form.

8. Please provide any additional information to help us better understand the claimant's medical condition as it pertains to their occupational capabilities. **Please do not include recommendations.** You may include any medical comments based on the *available* medical documentation.

9. ADDITIONAL QUESTION/QUESTIONS: