KANTOR & KANTOR, LLP
ALAN E. KASSAN, State Bar No. 113864
PETER S. SESSIONS, State Bar No. 193301
19839 Nordhoff St.
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272
akassan@ kantorlaw.net
psessions@kantorlaw.net

Attorneys for Plaintiff
Andy Chan

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Andy Chan,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Life Insurance Company of North America; Fujitsu Business Communications Systems, Inc. Long Term Disability Plan,<br><br>　　　　Defendants. | Case No. C 07-06214 WHA<br><br>**PLAINTIFF'S RESPONSE TO COURT'S AUGUST 1, 2008 ORDER REQUESTING RESPONSE RE: DISCOVERY** |

Plaintiff hereby submits his response to the Court's August 1, 2008 order requesting a response from the parties regarding whether further discovery is needed.

-1-　　**Case No. C 07-06214 WHA**

PLAINTIFF'S RESPONSE TO COURT'S REQUEST FOR RESPONSE RE: DISCOVERY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Introduction

This is an action for long term disability ("LTD") benefits pursuant to an employee benefit plan (the "Plan" or "LTD Plan") established by Plaintiff Andy Chan's former employer, Fujitsu Business Communications Systems, Inc. ("Fujitsu"). As a result, this action is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). The Plan was funded by a group disability insurance policy purchased by Fujitsu from defendant Life Insurance Company of North America ("LINA").

On July 25, 2008, Plaintiff filed Plaintiff's Brief Requesting Leave to Conduct Discovery. In his brief, Plaintiff contended that if Defendants' position was that the appropriate standard of review in this case was for abuse of discretion, Plaintiff was entitled to conduct discovery in order to ascertain the extent to which Defendants' conflict of interest affected its decision to terminate Plaintiff's disability benefits. *See Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (June 19, 2008); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc).

In response, on July 28, 2008, Defendants filed a statement with the Court asserting that the appropriate standard of review in this case is *de novo*. On August 1, 2008, Defendants lodged the "administrative record" with the Court. On the same date, the Court issued an order requesting a response from the parties regarding whether further discovery is needed given this standard of review. Plaintiff now submits his response.

## II.  Statement of Facts

Plaintiff included a detailed statement of the factual background of this matter in his first Brief Requesting Leave to Conduct Discovery, to which Plaintiff respectfully refers the Court.

## III.  Plaintiff's Response

The Ninth Circuit has held that in ERISA cases involving *de novo* review, "We agree . . .

that new evidence may be considered under certain circumstances to enable the full exercise of informed and independent judgment." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943–44 (9th Cir. 1995).

The Ninth Circuit has subsequently clarified, in a non-exhaustive list, what types of evidence district courts may want to take into account in deciding *de novo* cases:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Opeta v. Northwest Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007).

Here, the circumstances justify further discovery under both *Mongeluzo* and *Opeta*. Plaintiff requests leave to conduct the following discovery:

A.    <u>Deposition of Dr. Kenneth J. Hammerman</u>

As explained in Plaintiff's July 25, 2008 brief, Defendants' decision to terminate benefits was based almost entirely on the opinion of gastroenterologist Dr. Kenneth J. Hammerman. In his March 23, 2007 report, Dr. Hammerman confirmed that Mr. Chan's complaints were consistent with the medical records he reviewed. (LINA 0064).[1] Dr. Hammerman's report further found that Mr. Chan "has multiple medical problems," "demonstrate[d] generalized

---

[1] Citations in parentheses refer to pages of the "administrative record," as lodged with the Court by Defendants on August 1, 2008.

1  weakness," "walked slowly," was "midly Cushingoid . . . secondary to his chronic steroid use,"
2  and "does have some evidence of some mild muscle atrophy." *Id.* Dr. Hammerman concluded,
3  "In my opinion, because of his multiple medical problems and multiple medications, I would
4  consider Mr. Chan physically impaired. He does exhibit significant generalized weakness, lack
5  of stamina, and dyspnea [shortness of breath] on exam." *Id.* Dr. Hammerman opined that Mr.
6  Chan could only stand and walk occasionally (less than 2.5 hours per day), push/pull/lift/carry
7  less than ten pounds occasionally, and sit frequently (2.5-5.5 hours per day). Dr. Hammerman
8  stated that Mr. Chan should never balance, stoop, kneel, crouch, or crawl. (LINA 0066-67).

9  Despite Dr. Hammerman's confirmation of Mr. Chan's "multiple medical problems," and
10 difficulty with weakness and stamina, LINA interpreted this report to mean that Mr. Chan could
11 return to work. LINA terminated Mr. Chan's claim with a May 2, 2007 letter in which it stated
12 that "the information provided does not support and document that you are totally disabled[.]"
13 (LINA 0029-35). LINA suggested that even though Mr. Chan was nearly 60 years old, had
14 been out of work for 13 years for undisputedly severe medical reasons, and still suffered from
15 several serious medical conditions, he could return to work full-time as a clerk, cashier, customer
16 service representative, or telephone solicitor. (LINA 0032).

17 Mr. Chan appealed that decision. In conjunction with his appeal, he submitted a June 7,
18 2007 letter from his treating physician, Dr. Wesley Lisker (nephrology). (LINA 0027-28). Dr.
19 Lisker informed LINA that Dr. Hammerman had overestimated Mr. Chan's abilities. He stated
20 that Mr. Chan was at the lower end of the occasional scale, and thus "would not recommend him
21 standing or walking for 2.5 hours, based upon his medical condition." (LINA 0028). Dr. Lisker
22 also disagreed with the recommendations regarding Mr. Chan's ability to reach overhead and
23 perform manipulations and grasping with his hands. *Id.*

24 Dr. Lisker concluded:

26 > I base my estimation of Mr. Chan's abilities on my experience
27 > taking care of transplantation patients for the last 23 years. Mr.
28 > Chan had a kidney transplant since 1998. As is typical for many

-4-   **Case No. C 07-06214 WHA**
PLAINTIFF'S RESPONSE TO COURT'S REQUEST FOR RESPONSE RE: DISCOVERY

> patients with this lengthy duration of steroid treatment and exposure to chronic immunosuppressant medications, there is generalized weakness and poor stamina. Your assessment form does not clearly indicate the very lowest levels of the abilities of these patients, and makes me unable to agree with your assessment that the patient is still capable of any gainful employment. Particularly, looking at the list of job descriptions, check cashier, telephone solicitor, registration clerk, up through customer service representative, I believe that, and felt Dr. Hammerman agreed, that Mr. Chan is disabled and cannot function in these roles.
>
> Again, in referencing Dr. Hammerman's opinion, I believed at the time that I received the letter that Mr. Chan would be considered to be totally disabled based upon my reading of Dr. Hammerman's assessment. I had no reason to suspect that the data available on the entirely subjective physical ability assessment form would be used to keep Mr. Chan from continuing to receive deserved benefits for disability. I believe that the physical ability assessment form has overrated Mr. Chan's ability. I strongly disagree with the findings that you have made with respect to Mr. Chan's disability determination.
>
> I would appreciate your attention to Mr. Chan's situation and respectfully request that you reconsider your decision.

*Id*.

Despite this letter, LINA denied Mr. Chan's appeal in an August 22, 2007 letter in which it contended that Dr. Lisker's opinions were not sufficiently supported by medical evidence.

(LINA 0019-25).  However, there is no evidence in the record that Dr. Hammerman (or any physician for that matter) was shown Dr. Lisker's letter, let alone given the opportunity to respond to it.  Indeed, as Dr. Lisker himself noted, it appears that Dr. Hammerman's findings are inconsistent with Plaintiff returning to work full time ("I believed at the time that I received the letter that Mr. Chan would be considered to be totally disabled based upon my reading of Dr. Hammerman's assessment").  Furthermore, there is no question that Dr. Hammerman found Mr. Chan to be impaired because of his many medical conditions, and at no point in his report did Dr. Hammerman ever confirm that he believed Mr. Chan could return to work.

As noted above, *Mongeluzo* and *Opeta* permit the introduction of evidence from outside the "administrative record" in the case of "claims that require consideration of complex medical questions or issues regarding the credibility of medical experts."  Here, given the ambiguity surrounding Dr. Hammerman's opinions, and the fact that he was not given Dr. Lisker's letter (or even permitted to confer with Dr. Lisker concerning Dr. Lisker's longstanding treatment and/or opinion regarding Mr. Chan's ability to return to work), Plaintiff should be permitted to take Dr. Hammerman's deposition to clarify these issues.

Defendants may contend that testimony from Dr. Hammerman is not permitted here because similar medical testimony was excluded in *Opeta*.  However, the testimony barred in *Opeta* was very different from the testimony that would be adduced here.  In *Opeta*, "[t]here was no 'big question' or ambiguity as to what Dr. Gold meant by what he said -- the administrative record contained his explanation of what he meant, as well as his conclusion that there was a remote possibility at some point in the future that Opeta could return to extremely sedentary work."  484 F.3d at 1219.  Here, it is not at all clear what Dr. Hammerman's report means.  The fact that LINA and Dr. Lisker both read the same report and came to diametrically opposed conclusions regarding Mr. Chan's work capacity firmly demonstrates that.

B.    <u>Deposition of Jeff Vaupel and Documents Relating to Plaintiff's Administrative Appeal</u>

LINA Technical Specialist Jeff Vaupel, who signed the letter denying Mr. Chan's appeal on August 22, 2007, apparently is the person who was in charge of evaluating Mr. Chan's

administrative appeal. (LINA 0019-25).

However, the "administrative record" as prepared by Defendants is completely devoid of any documentation whatsoever showing how LINA arrived at the decision to deny that appeal. There is no record of intra-office correspondence, claim notes, telephone calls, referrals, consultations, meetings, or any other kind of activity by LINA between the date of the first denial letter and the date Mr. Vaupel issued his denial of Mr. Chan's appeal.[2]

Surely LINA engaged in some kind of review process in determining that Mr. Chan was not entitled to further benefits. Indeed, it was obligated to by law. *See* 29 C.F.R. § 2560.503-1(h) (obligating ERISA claim administrators to establish reasonable appeal procedures). Among other things, this appeal review process should have included "consult[ation] with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). This professional cannot have been someone who consulted in connection with the initial denial of the claim. 29 C.F.R. § 2560.503-1(h)(3)(v).

The only evidence in the record produced to the Court that LINA engaged in any kind of review process, let alone one that involved consultation with medical experts, is Mr. Vaupel's August 22, 2007 letter denying Mr. Chan's appeal. This letter contends that LINA "thoroughly reviewed the information submitted with your appeal," yet LINA's analysis of Dr. Lisker's letter is limited to a single sentence dismissing it because he "did not provide any supporting medical evidence." (LINA 0024). The letter further contends that LINA's appeal decision "is based on a clinical review of all your available office and treatment records, as well as an assessment by our medical staff," but there is no record of any such review and/or assessment in the documents submitted to the Court. *Id.*

As a result, Plaintiff is completely in the dark as to how LINA arrived at its decision to deny Mr. Chan's administrative appeal. *Opeta* holds that "the availability of very limited

---

[2] The Declaration of Renee Worst, to which the "administrative record" is attached, states that the record has been produced in reverse chronological order. Worst Decl. at ¶5. Yet there is nothing in the record between LINA's denial of Mr. Chan's appeal (LINA 0019-25) and its acknowledgment of receiving the appeal (LINA 0026).

1  administrative review procedures with little or no evidentiary record," 484 F.3d at 1217, is
2  sufficient grounds for the admission of extrinsic evidence, and this factual predicate is clearly
3  satisfied here.  As a result, Plaintiff should be permitted to take the deposition of Mr. Vaupel, the
4  LINA claims representative in charge of denying Mr. Chan's appeal, in order to determine what
5  review process LINA employed and how that process resulted in the denial of Mr. Chan's
6  appeal.  To the extent Defendants possess documents that reflect or are relevant to its appeal
7  process and ultimate denial decision, beyond what has already been produced, Plaintiff should
8  also be entitled to those documents as well.

## IV.    Conclusion

Plaintiff agrees that discovery is not necessary in every ERISA case where the *de novo* standard of review is employed.  However, given the ambiguity of Dr. Hammerman's report in this case, as well as the total lack of documentation of LINA's appeal process, plaintiff contends that discovery is warranted here.  Plaintiff therefore respectfully requests leave to conduct the discovery outlined *supra*.

Dated:  August 14, 2008                KANTOR & KANTOR LLP


                                       By:  */s/  Peter S. Sessions*
                                            Peter S. Sessions
                                            Attorney for Plaintiff
                                            Andy Chan

-8-    **Case No. C 07-06214 WHA**
PLAINTIFF'S RESPONSE TO COURT'S REQUEST FOR RESPONSE RE: DISCOVERY